## JAMES H. McFARLAND vs. BOSTON & LOWELL RAILROAD CORPORATION.

Suffolk.     March 10. — April 4, 1874.     COLT & ENDICOTT, JJ., absent.

Plaintiff offered oral evidence of an executory contract, also two letters, the one written by himself, which he offered to show by oral evidence was intended to execute said contract; the other a reply written by the defendant to the first letter; the legal construction of the two letters taken together, apart from the oral evidence, made the plaintiff the defendant's agent, and did not execute the executory contract. *Held*, that the legal effect of the two letters could not be varied by oral evidence.

The question, " When did you get the title to that note ? " is within the latitude allowable on cross-examination, and is not open to objection.

TORT in the nature of trover for conversion of certain merchandise. Trial in the Superior Court before *Pitman*, J., who by consent of the parties after verdict, made the following report to this court :

" The only question at issue was the title to the property, the defendant, upon receiving a bond of indemnity, having delivered the property to Reuben A. Adams, who claimed to own the same. The plaintiff introduced evidence tending to show that on April 3, 1868, he had two cases of other goods in the store of said Adams, who was a commission merchant in Boston ; that Adams held an overdue note signed by N. B. Scott, of Norwich, Ct., payable to Adams or order for $1062.50, and also another overdue note of Scott's payable to Adams, and an unpaid account ; that some talk was had about trading the goods in the cases for the first named note, as it was supposed plaintiff could have a better chance of obtaining value for the note than Adams had ; that thereupon it was agreed that Adams should give plaintiff twenty dollars to pay his expenses to Norwich, and that plaintiff upon an examination of Scott's affairs was to determine whether he would conclude the trade ; that plaintiff before leaving scraped off his own name from the cases in Adams's store, and said to him, ' If I send for that note these goods are to be yours and the note mine,' and that Adams assented to this ; that it was also understood that plaintiff was to aid Adams if he could, in obtaining payment of the other note and account ; that plaintiff forthwith went to Norwich, made an arrangement with Scott, by which he agreed to give the plaintiff goods for the $1062 note,

and also agreed to give goods for both notes if Adams would in-
dorse on the other note the full amount of all the goods that he,
Scott, had sent before to Adams on account of his indebtedness.

"That thereupon the plaintiff wrote Adams the following letter
' Norwich, Apr. 4th. *Sir,* — I have seen Scott, and he seems
willing to do what is right, but he wants to have these notes
squared up so as to have no accounts with you. You had better
endorse what you have had on these notes and send them to me
and he will pay the balance in goods but he won't give me goods
with receipted bill and you holding the notes against him. You
turn over them notes to me and I guess I can get the goods with-
out trouble. He expects to have some goods come Monday and
Tuesday. His stock in the store looks slim. You had better send
me those notes right down, because they are expecting a crash
every day. If they hold off until the middle or last of next week
they will be all right. Send by return mail. Jas. H. McFarland.
I have been to the depot but could not find out much about it.
I find the goods shipped to Thayer & Gill and in my name and
one case to his brother in Lowell about the 15th of March weight
·180 lbs. You can't tell who the goods are from when there is
no shipping receipt. He has not marked and reshipped any goods
at the depot. I overhauled their books. Scott seems willing to
do what's right and when he sees those notes are all right he will
fix all up, but you must not delay or'you will lose all. J. H. McF.'

"That Adams wrote in reply the following letter, which the
plaintiff received : ' Boston, April 4, 1868. Mr. McFarland, —
Enclosed please find note which is not stamped, you can get a 75
cent stamp and cross it. I have neglected to do it. I made a
mistake and stamped bill sale instead of notes, the story is old
that you have written me, those promises have been made before
and I have been fool enough to believe them, having so much con-
fidence in Scott but it is played out and you think you can get
pay for notes for that reason. I send you one of $1062.50, but
I shall hold the others, if he don't pay before Wednesday part or
whole you had better come up and I will put it into a lawyer's
hands for collection. I shall not humbug with him any longer he
thinks because I have been easy he has a soft thing but I am
ahead and he will find out so soon if he don't pay up don't allow
any goods to go out store, fix up the matter, is there any goods

on hand except what is on shelf in cases or quantities. I have no confidence if he has goods coming in, and you can trade with him, do it, and get goods for this note. I shall not endorse this, if he will pay you, give it up to him, but he wont. Take no promises but if anything comes by express or freight to any amount attach it in depot or fix it as you dam please, give him up the note if he gives you the goods or endorse on said note the amount and this is your authority coming with said note. R. A. Adams. Endorse amount on back but hold note unless you get value.'

" That plaintiff and Scott at once went to work and selected from the goods in Scott's store goods to the amount of said note, which are the goods the subject of this suit, received a bill of sale of the same in his own name, and delivered to Scott the note received in Adams's letter.

" The plaintiff further testified that he wrote the letter to Adams in that form, because of his agreement to do what he could to enable Adams to secure payment of the other note which he held against Scott, and hence he wrote to Adams to send both notes, and to turn over both notes to him, as he thought Scott would be willing to let the plaintiff have goods for both of said notes; that he intended to send for the first note for himself, and to take the other and collect it for Adams. Upon cross-examination the plaintiff was asked, against the objection and exception of his counsel, ' When did you get the title to that note ? ' He replied, ' I suppose according to our trade, when I received it at Norwich.'

" The said Adams called by the defendant gave a different version of the transaction between himself and the plaintiff, and testified in substance that he employed the plaintiff to go to Norwich and see if he could trade his note with Scott for goods on his, Adams's account ; that he paid money for plaintiff's expenses in advance, and told him if he got the goods that he would employ plaintiff to sell them for him at a fixed salary per week, and that all that plaintiff was to do was to be done as his agent.

" This was substantially the evidence upon the question at issue. The defendant claimed that upon the correspondence introduced by the plaintiff it was as matter of law entitled to a verdict. The plaintiff asked the court to rule ' that it was a

question of fact for the jury to find upon all of the evidence in the case whether the plaintiff was merely the agent of Adams to collect the note; that the court could not construe the letters alone and apart from the oral testimony, and that the question presented was for the determination of the jury on the whole evidence under proper instructions.' But the presiding justice being of opinion that whatever might be the finding of the jury as to the previous agreement between the parties in their talk, the ultimate authority which the plaintiff had was defined and limited by the letter in which the note was sent, and that the construction thereof was a matter of law, and that it did not pass property in the note to plaintiff, but did constitute him Adams's agent to collect, declined to submit the case to the jury as the plaintiff prayed, and thereupon directed a verdict for the defendant."

*J. F. Pickering & D. F. Crane*, for the plaintiff, contended that the case should have been submitted to the jury; that the evidence showed that the contract had been concluded before the letter of Adams was sent, and that Adams could not change the contract by his letter; that the question, " When did you get title to that note ? " should have been excluded, as it asked him to give his opinion upon a question of law.

*J. Nickerson*, for the defendant.

MORTON, J. The goods which are the subject of this suit, were received by the plaintiff of one Scott in payment of a note signed by Scott and payable to Adams; and the only question at issue was, whether the note at that time belonged to the plaintiff, or was held by him as the agent of Adams for collection. The evidence shows that the note was sent to the plaintiff by Adams inclosed in a letter; and construing this letter in connection with the letter from the plaintiff, to which it was an answer, it is clear that it constituted the plaintiff the agent of Adams to collect the note for him. The two letters admit of no other construction. If there was a previous oral agreement, as testified to by the plaintiff, that Adams should sell him the note, it was an executory contract, and it was not executed. Adams did not send the note in execution of such agreement. The letters of the parties show that he sent it to the plaintiff as his agent. The plaintiff accepted it as agent. Having accepted the agency without objection, he cannot

afterwards repudiate it, and claim the goods as his own, upon the ground that there was a prior agreement that the defendant should sell him the note. We are of opinion that the presiding justice correctly ruled that the ultimate authority which the plaintiff had was defined by the letter in which the note was sent, and that it constituted him Adams's agent to collect the note, and therefore that, upon the evidence, the defendant was entitled to a verdict.

The question asked the plaintiff, " When did you get the title to that note ?" was within the latitude allowable in cross-examination, and not open to objection.     *Judgment on the verdict.*