In the Matter of **PENN CENTRAL TRANSPORTATION COMPANY, Debtor.**

In re Proposed Settlement Concerning **PENN CENTRAL INTERNA- TIONAL N.V.**
**No. 70–347.**

United States District Court, E. D. Pennsylvania.

Nov. 10, 1972.

John Wallace, Philadelphia, Pa., for Trustees.

Spencer Ervin, Jr., Gratz, Tate, Spiegel, Ervin & Ruthrauff, Philadelphia,

Pa., for Richard Joyce Smith, Trustees, New York, New Haven & Hartford RR.

Alan Fellheimer, Philadelphia, Pa., Ballard, Spahr, Andrews & Ingersoll, Liaison counsel for Penn Central indenture trustees.

## MEMORANDUM OPINION AND ORDER NO. 1011

FULLAM, District Judge.

The Trustees of the Debtor have filed a petition (Document No. 3918) seeking approval of a settlement agreement under which the rights and obligations of the Debtor and various other parties to an intricate pre-bankruptcy financial arrangement would be reshuffled. The issue before the Court is whether the proposed settlement would be beneficial to the Debtor's estate and its reorganization. At the hearing on the Trustees' petition, the New Haven Trustee, as a shareholder of the Penn Central Company, the Debtor's parent, was the only party objecting to the proposed settlement.

It is first necessary to attempt to describe the original transactions. Early in 1970, the Debtor needed cash. Two of its wholly-owned leased lines, the Philadelphia, Baltimore & Washington Railway Company (PB&W)[1] and Penndel Company, were indebted to the Debtor in substantial amounts, but lacked the cash with which to repay their obligations. The Debtor's parent, Penn Central Company (PC) created a new wholly-owned subsidiary, Penn Central International N.V. (International), a Curacao corporation. International then borrowed $59 million in Swiss francs from Ufitec International Limited ("Swiss noteholders"); PC guaranteed International's obligation to repay

the loan. The net proceeds from this borrowing, after certain discounts and adjustments for exchange reasons, amounted to $53,719,636. International then loaned that sum to PB&W and Penndel ($28,522,036 to PB&W, and $25,197,600 to Penndel), and these two companies paid those amounts to the Debtor, in repayment of their indebtedness. The Debtor then loaned $11,880,000 to PC, and PC transferred that sum to International ($200,000 for the purchase of stock, and $11,680,000 as capital surplus). Substantially all of the $11,880,000 was then deposited in various bank accounts in the name of International.

After the Debtor's bankruptcy, two of the banks (Cleveland Trust Company, in which $1.5 million remains on deposit, and Bank of America, in which $665,000 remains on deposit) took the position that these funds were really the funds of the Debtor, and have asserted a right to retain the funds as setoffs against obligations of the Debtor to the banks.[2]

The lines leased from PB&W and Penndel Company form an essential part of the Debtor's railroad system, and would be likely to continue to be important, even if that system is ultimately pared down to a "core" of as little as 11,000 miles. (See Affidavit of A. M. Schofield, Document No. 4122; and see Documents Nos. 3033 and 4428.) As a general proposition, affirmance of these leases by the Trustees would involve payment of the rental called for in the leases. There is at least a substantial probability that, in the cases of PB&W and Penndel, this would include payment of accrued interest on the $53 million loan from International, payment of accruing interest thereafter, and payment of the principal at maturity. The accuracy of

---

1. The Debtor owns 65% of the PB&W stock. The remaining 35% is owned by the Pennsylvania Company, a wholly-owned subsidiary of the Debtor.

2. It has been determined that the exercise of such claimed setoffs has been properly enjoined. *See* In the Matter of

Penn Central Transportation Co. (Bank Setoff Case), 315 F.Supp. 1281 (E.D. Pa.1970); aff'd. 453 F.2d 520 (3d Cir.), cert. denied, 408 U.S. 923, 92 S.Ct. 2493, 33 L.Ed.2d 334 (1972). However, the banks would have the right to assert that they have a secured obligation which is entitled to priority treatment.

this statement is somewhat clearer in the case of Penndel than in the case of PB&W (in the latter case, the record does not disclose that the Debtor ever formally consented to PB&W's borrowing from International [see Article First, Section 2 and Article Sixth of the PB&W lease]; and Article Sixth of the PB&W lease is not entirely clear as to the circumstances under which the Debtor/lessee is liable for the principal payments). But it is at least clear that both PB&W and Penndel would be in a position to make reasonable claims that, under all of the circumstances, affirmance of the respective leases by the Trustees should be conditioned upon their assuming responsibility for interest and principal of the International obligations. See generally, Opinion and Order No. 974, Re: Sale of Park Avenue Properties, Part I(A).

To recapitulate, the present legal situation is approximately as follows: PB&W and Penndel are indebted to International in the sum of $53,719,636, plus interest. Their indebtedness to the Debtor has been reduced by that amount. The Debtor actually retained $41,839,636 and has a claim against its parent, PC, for the remaining $11,880,000. The prospect of recovering any substantial part of this loan from the parent company in the immediate future is minimal. The Debtor's estate needs the rail properties of PB&W and Penndel, but the Trustees are (probably) unable to affirm these leases except by paying rentals sufficient to liquidate the $53,719,636 indebtedness to International. The parent company, PC, needs money to support its continued corporate existence; the Debtor has been supplying corporate services to the parent, on a reimbursement basis, at a cost of approximately $17,000 per month. There is approximately $2,165,000 on deposit in the name of International, which presumably could be reached by the parent, or credited on account of the indebtedness of PB&W and Penndel to International, and in turn on International's indebtedness to the Swiss noteholders, were it not for the banks' assertion that the money is an asset of the Debtor's estate, and is subject to the banks' right of setoff.

Under the terms of the proposed settlement agreement, International would release its claims against PB&W and Penndel for $53,719,636, and the Debtor would release its claim against Penn Central in the amount of $11,880,000. The banks would permit the withdrawal of the $2,165,000 on deposit. Of this sum, $1,655,000 would be paid to International, and $500,000 would be paid to the Trustees. The Trustees would agree that, for purposes of determining priorities in the reorganization proceeding, the entire $2,165,000 will be treated as if it had been property of the Debtor, subject to whatever claim of priority treatment the banks may have by reason of their alleged right of setoff which this Court's orders preclude them from exercising.

The Trustees will acknowledge that International has a valid unsecured claim against the Debtor's estate in the sum of $41,839,635.54 (the amount of the original obligations of PB&W and Penndel, reduced by the $11,880,000 advanced to the parent company). The original obligations of the two leased lines to the Debtor, which had been cancelled as a result of the payments mentioned above ($28,522,036 in the case of PB&W, and $25,197,600 in the case of Penndel) will be reinstated. And finally, the $500,000 received by the Trustees from the bank accounts will be treated as payment in full for continuing to provide corporate services to PC until March of 1974. Thus, the Trustees would have immediate use of the $500,000, in exchange for their obligation to provide services costing somewhat less than that sum, over a period of about 27 months.

█ I am satisfied that the proposed settlement would be in the best interests of the Debtor's estate and its reorganization. From the standpoint of the

Trustees, the net result would be substantially the same as if the original transaction had never occurred (i. e., as if the leased lines had never attempted to pay off their indebtedness, and the railroad had never loaned the $11,880,000 to PC) and, instead, the railroad had arranged an unsecured loan from International in the sum of $41.8 million.

Clearly, secured creditors of the Debtor's estate have no room for complaint. As for other creditors and equity interests, while it is true that the total amount of the unsecured claims against the Debtor's estate will be increased by $41,839,635.54, the Debtor's assets will be increased to the extent of its reinstated claims against PB&W and Penndel.[3] Moreover, the earning power of the railroad will presumably be enhanced by reason of the removal of obstacles to the affirmance of the two leases. No unsecured creditor has objected to the proposed settlement, and the shareholder interests, represented by the parent company, affirmatively seek approval of the Trustees' petition.

█ As noted above, the only objection has come from the New Haven Trustee, in his capacity as a shareholder of the parent company. He does not contend that the proposed settlement is not advantageous to the Debtor's estate. Rather, his objection goes to the actions of the parent company in connection with pending refinancing of the parent company's obligation to the Swiss noteholders. It appears that the proposed refinancing has been approved by the shareholders of the Penn Central Company, over the objections of the New Haven Trustee and others. See Allen v. Penn Central Company et al., 350 F. Supp. 697 (E.D.Pa.1972). I adhere to the views previously expressed, that the advisability of the actions of the parent

company in this regard are not reviewable in this Court. See In the Matter of Penn Central Transportation Co. (Re: Instructions to the Trustees Concerning Penn Central Company), 328 F.Supp. 1268 (E.D.Pa.1971). Apart from possible jurisdictional questions, it is my feeling that this Court should not attempt to interfere with the decisions of the directors and shareholders of the Penn Central Company, so long as they do not adversely affect the Debtor's estate or the reorganization process.

For the foregoing reasons, an Order will be entered granting the Trustees' petition.

## ORDER NO. 1011

And now, this 10th day of November, 1972, upon consideration of the Petition of Trustees for Approval and Authority to Enter into Settlement with Penn Central Company, Penn Central International, N.V. and Certain Creditors of Penn Central International N.V., and with the Cleveland Trust Company and Bank of America (Document No. 3918), and upon hearing duly noticed, and for the reasons stated in the accompanying Memorandum Opinion, this Court finds:

1. That granting the Petition is in the best interest of the Debtor's estate and its ultimate reorganization.

2. That implementation of the settlement referred to in the Petition is in the best interest of the Debtor's estate.

It is therefore ordered:

1. The settlement among the Trustees, Penn Central International, N.V., the Penn Central Company, Penndel Company, The Philadelphia, Baltimore and Washington Railroad Company, Schroeder Trust Company and the Noteholders upon the terms set forth in

---

3. The record is inadequate to measure the added "value" of the Debtor's assets which will result from restating the accounts to reflect these obligations of (wholly-owned) lessors. By the same token, however, substituting an unsecured obligation to International for the Debtor's (probable) obligations under the leases does not necessarily actually increase the Debtor's total obligations.

paragraph 14 of the Petition, is approved.

2. The Cleveland Trust Company and Bank of America are authorized, at the direction of the Trustees and International, to pay over the principal amounts of the deposits referred to in paragraph 8 of the Petition, provided, however, that such payment shall be made without prejudice to any claim of setoff and/or any claim of priority of The Cleveland Trust Company in the amount of $1.5 million and Bank of America in the amount of $665,000 as provided by paragraph 7 of Order No. 1 herein as to which amounts said banks shall be deemed to have the same legal and equitable status as is enjoyed by depositories of the Debtor's funds who paid over sums in compliance with paragraph 7 of Order No. 1 herein.

3. It is adjudged and decreed that, except as to the amounts paid to the Trustees in respect of said deposits, the amounts to be paid to International shall be free and clear of all liens, claims and interests of the Debtor, its creditors, administrative claimants and the Trustees.

4. The Trustees or any one of them or their designees are authorized to take all action necessary to consummate the proposed settlement, including a release of any claim against The Cleveland Trust Company and Bank of America in respect of interest on said deposits and to make all necessary adjustments in the books and accounts of the Debtor and the Trustees necessary to reflect the transactions contemplated hereby.

5. The Cleveland Trust Company and Bank of America are authorized, to the extent necessary, to amend the Proofs of Claim filed herein by or on their behalf, in accordance with the settlement referred to in paragraph 14 of the Petition.

6. This Court reserves jurisdiction to effectuate the terms of this Order.