794 F.2d 647
 14 Bankr.Ct.Dec. 1411, Bankr. L. Rep. P 71,264
 In re DOWNTOWN PROPERTIES, LTD., an Alabama Limited
Partnership, Debtor.
AMSOUTH BANK, N.A., Plaintiff-Appellant,
v.
John L. HARTMAN, Jr., Gary E. Smith, II, Trust; Thomas E.
Reynolds, Trustee, Defendants-Appellees.
 No. 85-7567.
 United States Court of Appeals,
Eleventh Circuit.
 July 24, 1986.
 
 W.B. Hairston, Jr., William B. Hairston, III, Birmingham, Ala., for plaintiff-appellant.
 Joseph A. Fawal, Fawal & Spina, Birmingham, Ala., for defendants-appellees.
 Thomas E. Reynolds, pro se.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before CLARK, Circuit Judge, and TUTTLE and HENDERSON,* Senior Circuit Judges.
 HENDERSON, Senior Circuit Judge:
 
 
 1
 This appeal arises out of an interpretation by the United States Bankruptcy Court for the Northern District of Alabama of a consent decree entered into by the parties in a bankruptcy proceeding. The bankruptcy court altered the terms of the consent decree because of what it perceived to be a mutual mistake and the district court affirmed that decision. After a review of the pleadings and the record, we conclude that the findings of the bankruptcy court are clearly erroneous and reverse the judgment of the district court.
 
 
 2
 On February 15, 1983, Downtown Properties, Ltd., an Alabama limited partnership, filed a Chapter 11 bankruptcy petition. The bankrupt estate consisted of two office buildings located in downtown Birmingham. The buildings were subject to a tax lien by the State of Alabama and three mortgages. At the time of the appointment of a bankruptcy trustee there were no funds in the estate. The trustee then negotiated a contract on behalf of the estate to sell the buildings for $380,000.00. The bankruptcy court held a hearing on November 4, 1983 to inform all of the creditors of the proposed sale. At this meeting, these creditors, the trustee, and the debtor agreed to a consent order approving the sale of the buildings. This order provided that the proceeds from the sale would be distributed as follows:
 
 
 3
 1) Payment in full of all taxes due the State of Alabama;
 
 
 4
 2) Payment in full of the first mortgage in the amount of $189,825.75 plus interest;
 
 
 5
 3) Payment of $130,000.00 to the second mortgagee in satisfaction of that mortgage;
 
 
 6
 4) Payment of $10,000.00 to the third mortgagee in satisfaction of that mortgage;
 
 
 7
 5) Payment to Trustee for Administrative Expenses;
 
 
 8
 6) Payment of the remaining funds to the unsecured creditors.
 
 
 9
 Record Excerpts at 10.
 
 
 10
 The thrust of the consent decree was that the State of Alabama and the first mortgagee would be paid in full; the second and third mortgagees accepted partial payment in full satisfaction of their claims; and the unsecured creditors would receive reimbursement out of the remaining proceeds. The attorney for the second mortgagee stated that he was taking less money than he was entitled to in order to facilitate the sale, "but in the event this contract doesn't close, ... I want my claim approved by the court for the amount that I have submitted." See Tr. of Nov. 4, 1983, Bank.Pro. at 8. Also at the November 4th meeting, the trustee indicated that the estate might be enhanced by as much as $20,000.00 because of a recently filed insurance claim.
 
 
 11
 On November 21, 1983, the estate received $10,218.00 in insurance proceeds. On December 29, 1983, the sale of the buildings was consummated. Subsequently, the second mortgagee filed an amendment to his claim for the proceeds alleging that he was entitled to the additional insurance money previously paid into court. On August 9, 1984, the bankruptcy court held a hearing to determine the final distribution of the estate. The bulk of this meeting was devoted to a dispute over the fee applications submitted by the debtor's attorney and the trustee. The attorney for the second mortgagee opposed the requested fees as being unreasonably high. Tr. of Aug. 9, 1984 Bank.Pro. at 18. He also stated that if the fees were not allowed in full his client would be entitled to the remaining proceeds in the estate after the unsecured creditors were paid in full. Id.
 
 
 12
 In October, 1984 the bankruptcy court issued an order awarding compensation to the lawyers and the trustee. Thomas Reynolds, acting as the trustee and trustee's attorney, received the aggregate sum of $5,622.52 and David L. Vann, the debtor's attorney, received $2,082.00. The second mortgagee filed a motion to reconsider that order and a motion to prevent the trustee from disbursing the funds in accordance with the consent decree. These motions were addressed by the bankruptcy court at a hearing held on November 29, 1984. At this hearing, the second mortgagee again contended that the fees awarded the trustee and the debtor's attorney were excessive. He also asserted, for the first time, that his right to receive more than the $130,000.00 allotted to him in the consent decree was superior to the rights of the unsecured creditors. Tr. of Nov. 29, 1984, Bank.Pro. at 4-5. He claimed that his agreement to sign the decree was based on the trustee's promise to accept reasonable compensation for his services and that the trustee failed to live up to that promise. Id. at 6, 23. At the end of the meeting, the trustee stated that he felt that the second mortgagee had taken a "180 degree about face ... [and] that to confirm the assertions made by the [second mortgagee], today would put a blessing of the Court on a breach of contract." Id. at 24. The bankruptcy court continued the hearing to December 14, 1984.
 
 
 13
 At the next hearing, the second mortgagee represented that, "at the time we were talking about the sale of the building, I specifically reserved any claim that I had ... anticipating that there would be excess funds from the sale of the building. ... Persuant [sic] to that ... I filed an amended claim to the balance of the monies.... If I gave up my position as a secured creditor, the worse [sic] position I should be in is that of an unsecured creditor." Tr. of Dec. 14, 1984, Bank.Pro. at 7, 9-10. The second mortgagee further stated that he was entitled to a pro rata share of the remaining funds in the estate with the other unsecured creditors. This position, however, was contradicted by the attorney for AmSouth Bank (AmSouth), an unsecured creditor and the appellant in this appeal. AmSouth contended that the second mortgagee had agreed to accept monies in excess of $130,000.00 only if there were funds left after the estate's expenses were paid and the unsecured creditors received full payment. Id. at 22. The trustee expressed his agreement with AmSouth that the second mortgagee's claims were limited to funds remaining after the unsecured creditors were paid in full. Id. at 23-24.
 
 
 14
 At the end of this hearing, the bankruptcy judge stated that he intended to award the trustee the amount of fees indicated in his previous order. Then, for the first time, the second mortgagee urged that he should be relieved of his obligations under the consent decree because of the additional $10,218.00 of insurance money that came into the estate after the agreement was signed but before the close of the sale. He stated that he had no knowledge at the time of the agreement that the additional money would become a part of the estate. Id. at 49-50. Despite AmSouth's strong protests, the bankruptcy judge agreed with the second mortgagee's argument and stated that he would prepare an order to that effect.
 
 
 15
 On January 8, 1985, the bankruptcy court issued its final order. The court first reaffirmed its previous order awarding fees to the trustee and the debtor's attorney. The court then made the factual findings that the second mortgagee entered into the consent decree without knowing that additional funds were potentially available, and that for that reason, he agreed to expedite the sale. The court concluded that the agreement should be modified and impressed an "equitable lien" on the insurance money in favor of the second mortgagee.
 
 
 16
 AmSouth appealed the bankruptcy court's order to the United States District Court for the Northern District of Alabama claiming that the consent decree should have been enforced and that the unsecured creditors were entitled to the insurance proceeds. The second mortgagee filed a cross-appeal contending that the fees awarded the trustee were unreasonable. On July 29, 1985 the district court affirmed the bankruptcy court's order awarding the insurance money to the second mortgagee on the basis of mutual mistake but remanded the issue of attorneys' fees to the bankruptcy court for a discussion of the factors enunciated in Johnson v. Georgia Highway Express, 488 F.2d 714 (5th Cir.1974). AmSouth then appealed that order to this court.
 
 
 17
 Before turning to the merits of this appeal, there is a matter of our jurisdiction for resolution. Although jurisdiction of the appeal was not challenged before oral argument, it was raised by the court at that time and we are obligated to examine it sua sponte. See Martin v. Campbell, 692 F.2d 112, 114 (11th Cir.1982).
 
 
 18
 If the bankruptcy court had awarded less fees upon remand there may have been enough money remaining in the estate to completely pay off AmSouth's claim and moot this appeal. Therefore, the district court's order was not final for the purposes of 28 U.S.C.A. Sec. 1293(b) which requires that appeals to this court be taken from a final judgment, order or decree. See In Re Regency Woods Apartments, Ltd., 686 F.2d 899, 901 (11th Cir.1982). AmSouth contends, however, that the district court's judgment is appealable under the collateral order doctrine of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Under Cohen, for a non-final order to be reviewable it must be (1) independent and easily separable from the other claims in the action, (2) present a need to secure prompt review in order to protect the important interests of a party, and (3) be examined in light of practical, rather than narrowly technical considerations. Regency Woods, supra at 902. This circuit has held that the Cohen doctrine applies to bankruptcy proceedings. Regency Woods, supra at 901. In conducting our Cohen analysis, we note that on December 19, 1985, the bankruptcy court issued an order reaffirming its previous award of attorneys' fees. That order has not been appealed by either party.
 
 
 19
 The district court's order clearly meets the first prong of the Cohen test. The issue of entitlement to the insurance proceeds is separable from the question of the appropriate fees to be awarded the trustee. One issue concerns the interpretation of the consent decree while the other involves an analysis of the trustee's efforts on behalf of the estate. The second prong is also satisfied because, now that the bankruptcy court has issued its final unappealed order, consideration of the district court's decision is necessary to secure review of AmSouth's claims. And, the third prong of the test, an examination of the order in light of practical considerations, also MILITATES IN FAVOR OF REVIEW BECAUSE THERE is no longer the possibility that the issues raised by this appeal will be mooted by a different award of attorney's fees. Accordingly, we conclude that the district court's order of July 29, 1985, is appealable under the Cohen doctrine and proceed to consider the merits of this appeal.[1]
 
 
 20
 Both the district court and the bankruptcy court found that the second mortgagee released his claims against the bankrupt estate when he signed the consent order and accepted payment of $130,000.00 except to the extent that there were funds remaining in the estate after the unsecured creditors were paid in full. See Record Excerpts at 2, 28. The district court then held that the bankruptcy court did not err "in setting aside the agreement of the parties based upon mutual mistake." Id. at 6. This determination was predicated on the finding that the "agreement was based on the assumption that no further funds other than the proceeds from the sale of the office buildings would come into the estate." Id. Because that assumption proved to be false, the district court agreed with the bankruptcy court that the second mortgagee, as an original secured creditor, was entitled to receive the additional funds in the estate at the expense of the unsecured creditors.
 
 
 21
 The factual findings of the bankruptcy court cannot be set aside unless they are clearly erroneous. In Re Chalik, 748 F.2d 616, 619 (11th Cir.1984). This deference is especially important when those findings are affirmed by the district court. Id. The findings that the second mortgagee did not know about the insurance proceeds at the time that he agreed to the consent decree and that the lack of such additional proceeds was the basis for the agreement are clearly factual findings entitled to acceptance by this court if supported by the evidence. Nevertheless, our review of the record convinces us that these findings are clearly erroneous.
 
 
 22
 At the initial bankruptcy hearing held on November 4, 1983, the trustee made the following statement in open court, "there is also an insurance claim that has been filed claiming $20,000.00 which may or may not enhance the bankruptcy estate." Tr. of Bank.Pro. of Nov. 4, 1983 at 4 (emphasis added). The second mortgagee was present at this hearing. Moreover, the second mortgagee did not indicate at any time during the hearing that his agreement to take less than his total claim was based on his understanding that no more money would be available to the estate. Rather, he stated that, "I have agreed to take less than the amount of my claim subject to the contract closing, but in the event this contract doesn't close, as I indicated to you, I want my claim approved by the court for the amount that I have submitted." Id. at 8. (emphasis added).
 
 
 23
 As the meeting progressed, it became even more evident that the basis of the consent decree was not that no further funds would be available but that there was enough money already in the estate to fully pay all of the unsecured creditors and the fees and expenses of administration. The trustee stated that, "it is our belief that should the funds be distributed in the manner in which that order provides and pursuant to our agreements concerning what fees are anticipated to be applied for, that it would provide sufficient funds ... to make a hundred percent dividend to unsecured creditors...." Id. at 16. And, after the court was informed that the parties had received a slightly higher offer for the property but wanted to reject it, the bankruptcy judge responded that he would sign the decree for the lower offer "if everybody gets--if the unsecured creditors, every creditor who has filed a claim here, is going to get paid." Id. at 19-20. Thus, from a review of the November 4, 1983 transcript it is obvious that the consent order was not premised on the assumption that no further funds would be forthcoming but on the understanding that the sale would be closed and that the unsecured creditors would be paid in full.
 
 
 24
 After the insurance proceeds were paid into the estate and the sale was closed, the second mortgagee amended his claim in an attempt to obtain full payment of his mortgage. The transcripts of the next three bankruptcy hearings reveal, however, that the second mortgagee was basing his claim not on the availability of the insurance money but on his allegations that the fees requested by the trustee and the debtor's attorney were unreasonably high. For instance, at the November 29, 1984 hearing, the second mortgagee stated that he "agreed to take $130,000.00 of the sale proceeds, in order for the sale to proceed.... That agreement was further made on the basis that Mr. Reynolds would accept reasonable compensation." Tr. of Nov. 29, 1984 Bank.Pro. at 6 (emphasis added). The second mortgagee then argued strenuously that the attorneys' fees requested were excessive because it was his clients' concessions that created the success in the case not the legal expertise of the attorneys. Id. at 19-20. At no time during this hearing did the second mortgagee maintain that the consent decree should be invalidated because unexpected funds were paid into the estate. In addition, at this hearing the second mortgagee made the following statement with respect to those funds:
 
 
 25
 Your Honor, can I bring up one point with reference to the assumption or understanding of agreements that I had with Mr. Vann and Mr. Reynolds, with reference to the reasonableness of the fee? That approximately $10,000.00 came into this estate after the sale of the building which was not--everybody made a guess what it was, or thought what it was, but there was no way of determining whether the money would be paid, if at all.
 
 
 26
 Id. at 29-30 (emphasis added). This statement by the second mortgagee makes certain that, contrary to the bankruptcy court's finding, he was aware of the possibility of the excess insurance proceeds when he was negotiating the consent agreement. Furthermore, the second mortgagee's complaint was not that he would have refused to sign the consent order had he known about the extra money but that the alleged excessive fees claimed by the trustee and the debtor's attorney were swallowing up those extra funds.
 
 
 27
 At the bankruptcy hearing held on December 14, 1984, the court made the observation that the second mortgagee had released all of his claims against the debtor's estate by agreeing that the unsecured creditors would be paid in full. Tr. of Dec. 14 Bank.Pro. at 45. The second mortgagee responded as follows:
 
 
 28
 Your Honor, I have never denied the fact that that was in fact my agreement, however, that agreement was based on the agreement of Mr. Reynolds and Mr. Vann. It appears to me ... that if two people want to back out of their agreement, the third party ought to be able to back out of the same agreement....
 
 
 29
 Id. In other words, the second mortgagee once again took the position that the trustee and debtor's attorney breached the consent order by requesting unreasonably high fees and therefore the second mortgagee did not have to honor his agreement that the unsecured creditors would be paid in full before he was entitled to any additional money.
 
 
 30
 After the preceding discussion between the court and the second mortgagee, the court announced that it was going to award the trustee and the debtor's attorney their requested fees. Then, towards the end of the hearing, the court asked the second mortgagee if it was not true that only a small amount of money was actually in dispute. Id. at 49. The second mortgagee replied, "[n]o sir. Your Honor, all of the agreements were made prior to the receipt of the $10,000.00, which were insurance proceeds, which I didn't have any knowledge of; Mr. Reynolds didn't have any knowledge of." Id. This was the first time that the second mortgagee claimed that he did not know about the insurance money when he entered into the agreement. Then, the following discussion took place:
 
 
 31
 The Court: Are you making the point, Mr. Hartman, that you were relieved from your limitation of what you agreed to accept by the fact that the estate got in $10,000.00 more?
 
 
 32
 Mr. Hartman: Your Honor, I'm taking that position.
 
 
 33
 The Court: If you take that position, I might rule with you on that.
 
 
 34
 Mr. Hartman: Your Honor, again, by his own testimony,[2] at the time of the agreement, the only thing we knew we had coming were the sales proceeds of the building. Had no more monies come in, I would not really have expected a significant amount of money, particularly, if Mr. Vann is awarded a fee. The $10,000.00 has now just totally dissipated.
 
 
 35
 Id. at 49-50. After this statement, the bankruptcy judge indicated that he agreed with the second mortgagee and would award him the extra $10,000.00.
 
 
 36
 In light of this lengthy review of the record, it is clear that the original agreement between the parties provided that the unsecured creditors would be paid in full before the second mortgagee would receive any additional monies from the estate.[3] This agreement was not enforced by the bankruptcy court solely because of its finding of mutual mistake. However, the parties knew of the possibility of additional insurance proceeds prior to the execution of the consent order because the trustee announced that fact during the first bankruptcy hearing. In fact, the second mortgagee admitted as much during the third bankruptcy hearing held on November 24, 1984. It is equally clear that the absence of any additional funds was not a premise for the agreement. Rather, the second mortgagee agreed to take less than he was entitled to in order to expedite the sale of the property in the estate. For these reasons, we conclude that the bankruptcy court's findings that the second mortgagee "believed that no further funds would be available and made his agreement to expedite the sale on that basis" were clearly erroneous. Because the second mortgagee relies solely on these findings and the doctrine of mutual mistake in his defense of this appeal, the district court's judgment awarding the second mortgagee the $10,218.00 in insurance money must be vacated. Because the record is unclear as to how the insurance proceeds should be divided among the unsecured creditors,[4] this case is remanded to the bankruptcy court for further proceedings consistent with this opinion.[5]
 
 
 37
 VACATED and REMANDED.
 
 
 
 *
 See Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 [1]
 After oral argument, the second mortgagee filed a motion to dismiss this appeal for lack of jurisdiction. Our conclusion that the July 29, 1985 order is appealable under Cohen resolves that motion
 
 
 [2]
 The second mortgagee never pointed to the testimony to which he was referring
 
 
 [3]
 The second mortgagee concedes this fact at p. 3 of his brief
 
 
 [4]
 In the bankruptcy court, the second mortgagee contended that, at worst, he was entitled to a pro rata share of the insurance proceeds as an unsecured creditor. He has not pressed this argument in his brief on appeal. In any event, in light of the conclusive evidence in the record that the second mortgagee agreed to a payment in full to the unsecured creditors before he was to be paid any additional money, this argument has no merit
 
 
 [5]
 Because of our disposition we need not address AmSouth's other arguments urging reversal