In the Matter of: AQUASPORT, INC., Debtor–Appellee.

ITT Commercial Finance Corp., Appellant.

Bankruptcy No. 90–2037–Civ.

United States District Court, S.D. Florida.

Jan. 30, 1992.

## ORDER AFFIRMING FINAL JUDGMENT

HOEVELER, District Judge.

Appellant ITT Commercial Finance Corporation (hereinafter ITT) appeals from a decision of the United States Bankruptcy Court for the Southern District of Florida, entered by the Honorable Sidney M. Weaver, in which it was held that ITT was not entitled to setoff. *See In re Aquasport, Inc.*, 115 B.R. 720 (Bkrtcy.S.D.Fla.1990). The Court has heard oral argument of counsel, and as such, this matter is ready for the Court's resolution.[1]

### I. Standard of Appellate Review

Prior to explicating the specific legal issues which this Court now confronts, it is necessary to first delineate the standard of review that this Court must adhere to in resolving the instant appeal. It is clear that the:

> [a]ppellant is entitled to an independent *de novo* review of all conclusions of law and the legal significance accorded to the facts. *In re Carapella (Carapella v. Carapella)*, 115 B.R. 365, 367 (M.D.Fla.1990), *aff'd*, 925 F.2d 1474 (11th Cir.1991). Findings of fact shall not be set aside unless clearly erroneous. *Griffin v. Missouri Pacific Railroad Co.*,

1. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158.

413 F.2d 9, 12 (5th Cir.1969); *In re Downtown Properties, Ltd., (Amsouth Bank, N.A. v. Hartman* ), 794 F.2d 647, 651 (11th Cir.1986); Bankruptcy Rule 8013.

*In re Layman*, 131 Bankr. 495, 496 (M.D.Fla.1991). Equally clear, moreover, is the reality that "[w]here an issue raises a mixed question of law and fact, the Court likewise will review the bankruptcy court's determination *de novo.*" *In re Marks*, 131 Bankr. 220, 222 (S.D.Fla.1991) (citation omitted).

## II.  Background

Aquasport, Inc., a manufacturer of recreational boats, commenced voluntary Chapter 7 proceedings on June 6, 1988.[2]  ITT, a finance company that had entered into a "floor plan" financing agreement with Aquasport,[3] thereafter filed its proof of claim in August of 1988 in the amount of $1,856,992.00 (contingent) and $54,316.50 (fixed).  Then, in April of 1990, the Aquasport Trustee filed an adversary proceeding against ITT.  The first count of the Trustee's complaint entailed an objection to ITT's proof of claim on the grounds that ITT owed $87,701.44 to Aquasport under the floor plan agreement.  The Trustee articulated other objections to the claim, contending that the "contingent portion ha[d] not been properly valued pursuant to 11 U.S.C. Section 502(c), and [was] otherwise invalid, inaccurate and inflated."  D.E.

**2.**  Aquasport would sell these recreational boats at wholesale to different dealers and distributors.

**3.**  ITT would finance for retail dealers their acquisition of Aquasport-manufactured boats. More particularly, on September 14, 1985, "Aquasport executed a Floor Plan Repurchase Agreement ... to induce ITT to Floor Plan finance its dealers and distributors." D.E. # 10, p. 4.  Under the floor plan agreement, following Aquasport's "sale and delivery of boats to the dealers, and in exchange for delivery of documents and title to the Claimant [ITT], the Claimant paid the purchase price to the Debtor [Aquasport] plus any applicable finance charges." *In re Aquasport, supra,* at 721.

ITT argues that when Aquasport filed for bankruptcy on June 6, 1988, Aquasport "had a contingent unliquidated indebtedness to ITT of $1,856,992.00.  Under the terms of the Repur-

# 10, Appendix 3.  The Trustee then counterclaimed in the second count, bringing suit against ITT under 11 U.S.C. § 542 for turnover of the $87,701.44 and requesting, *inter alia,* that the bankruptcy court disallow ITT's claim because of ITT's failure to turn over the $87,701.44.

The case was set for trial on May 15, 1990.  On June 22, 1990, the bankruptcy court entered a Final Judgment in favor of the Trustee.  The bankruptcy court found that ITT timely filed a proof of claim; noting that "[s]aid proof of claim was substantially unliquidated, contingent in nature and resulted from potential claims against the Debtor for boats sold earlier than March 6, 1988, a period of 90 days prior to the commencement of the Chapter 7 proceeding." *In re Aquasport, supra,* at 721. The court also found that ITT's proof of claim did not disclose the existence of any available setoffs and indeed explicitly stated that no setoffs existed.  *Id.*  Additionally, the court observed that the proof of claim had not been amended, and that in ITT's answer to the adversary complaint, ITT did not mention "any available setoffs against the trustee's potential recovery." *Id.*

As noted *supra,* ITT would normally have paid Aquasport the sum of $84,018.90 for the thirteen boats, a fact also stipulated to by the parties.  Of much importance to the current appeal is the reality that Judge

chase Agreement, this amount represented all outstanding debt dealers owed to ITT for which AQUASPORT indemnified ITT.  In addition, the Debtor owed ITT $54,316.50 for non-contingent and liquidated pre-bankruptcy losses...." D.E. # 10, p. 4.  In any case, it is clear that:

In late April and early May, 1988, pursuant to the financing agreement with the Claimant, the Debtor sold a total of thirteen (13) boats to three (3) separate dealers.  The amount that the Claimant would normally have paid the debtor for these boats is the sum of $84,018.90.  This sum was apparently due the Debtor as of May 1, 1988.  However, the Claimant did not pay any portion of this fund to the Debtor and withheld these funds as a security for its contingent claims.

At the time of trial, the parties stipulated and submitted sufficient evidence to support estimation of the Claimant's claim in the amount of $102,871.66.

*In re Aquasport, supra,* at 721.

Weaver found that "no portion of the $84,-018.90 is available for setoff against the Defendant's estimated claim." *Id.* The bankruptcy court reasoned that by filing its proof of claim without indicating a setoff right, ITT had waived any right to setoff. Furthermore, the bankruptcy court concluded that ITT's "failure to raise the issue of setoff in its answer to the counterclaim also result[ed] in waiver." *Id.* at 722.

The bankruptcy court, moreover, held that even regardless of the waiver question, "the fund in question would not be available for setoff because contingent and unmatured claims cannot be used as a setoff under Florida law." *Id.* Indeed, the court observed that if setoff was permitted in the case, it would result in an improvement of position for ITT, in contravention of 11 U.S.C. § 553(b). *Id.* In reaching this decision, the court found meritless ITT's contention that the actual setoff may not have occurred prior to bankruptcy. Actually, the bankruptcy court observed that the "question of whether the setoff occurred post-petition or pre-petition appears to be irrelevant under the circumstances" of the present case, citing approvingly *Braniff Airways, Inc. v. Exxon Co.*, 814 F.2d 1030, 1040 n. 13 (5th Cir.1987). *See id.*

### III. Waiver

In appealing Chief Judge Weaver's decision, appellant ITT articulates a number of arguments in opposition to the bankruptcy court's analysis and conclusions. ITT first argues that its right to setoff was not procedurally waived, relying upon Fed. R.Civ.P. 15(b), which reads in relevant part: "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In effect, it is argued that ITT's entitlement to setoff was in actuality the issue tried at the trial, and as such, Rule 15(b) requires this Court to find that the issue of setoff was not procedurally waived by ITT. It is further contended that the relevant case law confirms that an appellate court can adjudicate issues that were tried at the trial by consent, even if the pleadings are silent as to such issues.

ITT also challenges the bankruptcy court's determination that the law is such that the filing of a proof of claim without asserting a setoff has the effect, in and of itself, of waiving any setoff right. Lastly, and in any case, ITT argues, it cured any deficiency in its proof of claim by filing an amended proof of claim on May 29, 1990. A review of these arguments, the pertinent portions of the record, and the relevant case law leads this Court, in accordance with the standard of appellate review that this Court must follow, to a conclusion at odds with the one reached by the bankruptcy court. In effect, this Court determines that ITT did *not* procedurally waive its right to setoff in the instant case. Consequently, this Court will reach the substantive arguments proffered by ITT concerning its right to setoff.

### IV. Is Setoff Available to ITT?

ITT vigorously challenges the bankruptcy court's denial of ITT's right to setoff. In analyzing these challenges, attention must first be directed at 11 U.S.C. § 553(a), which reads in pertinent part as follows:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case....

Undoubtedly, " '[t]he right of setoff under section 553 is permissive, not mandatory ...' and its allowance is within the discretion of the court." *In re Express Freight Lines, Inc.*, 130 B.R. 288, 290 (Bkrtcy. E.D.Wis.1991) (citations omitted). It is similarly evident that:

> Courts look to the parties' contractual relationship in the light of state law to determine whether there is a valid and enforceable basis for setoff before considering whether it would be equitable to allow it.... Although there must be a state law right of setoff in order for 11 U.S.C. § 553 to be applicable, the grant-

ing or denial of setoff after one of the parties files a bankruptcy petition is prescribed by the terms of 11 U.S.C. § 553.... In other words, 11 U.S.C. § 553 limits the use of setoff rights already available under state law, but it does not expand setoff rights to encompass rights that do not otherwise exist under state law.

*Id.* (citations omitted). Significantly, the burden of proof rests on the party articulating a right to setoff. *See In re Pester Refining Co.*, 845 F.2d 1476, 1486 (8th Cir. 1988).

ITT argues that notwithstanding the bankruptcy court's conclusion to the contrary, Florida law does not preclude setoff of ITT's claims. In developing this argument, it is further contended by ITT that 11 U.S.C. § 502(b) accelerates and matures all debts owed by the debtor to its creditors on the date a bankruptcy petition is filed. This reality, ITT argues, means that "ITT's claims against AQUASPORT were matured on the date of filing and therefore properly the subject of a set-off." D.E. # 10, p. 20. ITT also maintains that the bankruptcy court erred in failing to apply equitable setoff principles in the present case.

■ However, a review of the pertinent portions of the file, and an examination of the applicable case law and arguments articulated by the parties leads this Court, in accordance with the appropriate standard of review as noted *supra*, to find that the conclusion reached by the bankruptcy court was sound. That is, under prevailing law, a right to setoff is not available to ITT in the present case. In reaching this determination, the Court specifically notes that § 502(b) does not offer ITT a legal vehicle by which it can legitimize an entitlement to setoff under the law. Among other realities, moreover, this Court finds somewhat significant the fact that ITT evidently stipulated to the contingent nature of its claim. *See* D.E. # 10, Appendix 6. Nor does this Court find that given the present circumstances of the case, the doctrine of equitable setoff is available to benefit ITT.

■ Importantly, it should be noted that even if this Court were to reach a different

conclusion as to the availability of setoff under the law, this Court remains confident that the bankruptcy court was entirely correct in finding that "allowance of the setoff in this case would result in an improvement of position for the Claimant" in violation of § 553(b). *See In re Aquasport, supra*, at 722. Section 553(b) reads in relevant part:

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 365(h)(2) or 365(i)(2), of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

As to the improvement of position issue, ITT contends that § 553 is unquestionably limited to pre-bankruptcy setoffs, and that in this case, ITT cannot be shown to have exercised a pre-petition setoff. ITT further challenges the bankruptcy court's reliance upon *Braniff Airways, Inc. v. Exxon Co.*, 814 F.2d 1030 (5th Cir.1987), which the bankruptcy court looked to in support of the proposition that the "question of whether the setoff occurred post-petition or pre-petition appears to be irrelevant under the circumstances of" the case. *In re Aquasport, supra*, at 722. Instead, ITT argues for the adoption of the reasoning supplied by the court in *In re Bass Mechanical Contractors, Inc.*, 88 B.R. 201 (Bkrtcy.W.D.Ark.1988), a decision which the bankruptcy court explicitly rejected. *See In re Aquasport, supra*, at 722–23. In effect, ITT emphatically argues that the improvement of position test should not be applicable to post-petition setoffs.

The arguments tendered by ITT in opposition to the bankruptcy court's disposition of this issue are unpersuasive, and this

Court finds, after an examination of the record and case law, that the bankruptcy court articulated a legally correct conclusion when it noted that permitting the setoff would result in an improvement of position for ITT, as prohibited by § 553(b). In fact, even if this Court were to take issue with the bankruptcy court's determination that the setoff occurred pre-petition, a review of the conflicting case law and other authorities leads this Court to embrace as more persuasive the propositions enunciated by both the bankruptcy court and the *Braniff* court concerning the scope of § 553. As such, a reversal in the present case is clearly unwarranted.

Finally, ITT argues that the lower court erred by failing to recognize ITT's right to recoupment, which is a more distinctive and limited type of setoff right. *See generally In re Midwest Service and Supply Co.*, 44 B.R. 262, 265–66 (D.Utah 1983). This Court finds that the issue of recoupment is in fact being raised for the first time on appeal (and, moreover, that it was not an issue tried by the express or implied consent of the parties in the bankruptcy court[4]), and as such, this Court will not consider ITT's recoupment arguments.

There being no other legitimate reason for reversing the bankruptcy court's decision, this Court hereby affirms the Final Judgment entered by the bankruptcy court below, whereby the Trustee was allowed to recover $84,018.90 plus $21,405.50 in interest for a total judgment of $105,424.40, and whereby ITT was granted an unsecured claim of $102,871.66.

DONE and ORDERED.

---

4. This conclusion, it should be mentioned, is certainly not inconsistent with a determination that *setoff* (as opposed to recoupment) represents an issue that was tried by the consent of the parties at trial.