In re TOWER ENVIRONMENTAL, INC., Debtor.

BARNETT BANK OF TAMPA, Plaintiff/Counter Defendant/Cross Defendant,

v.

TOWER ENVIRONMENTAL, INC., Defendant/Cross Defendant.

OFFICIAL CREDITORS COMMITTEE, Defendant/Counter Plaintiff/Third Party Plaintiff,

v.

STATE of Florida, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Third Party Defendant/Cross Plaintiff.

Bankruptcy No. 95–7219–8G1.
Adversary No. 95–850.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 18, 1997.

Patrick Skelton, Tampa, FL, for Plaintiff/Counter Defendant/Cross Defendant.

Alberto F. Gomez, Tampa, FL, for Defendant/Cross Defendant.

Michael C. Markham, Clearwater, FL, for Defendant/Counter Plaintiff/Third Party Plaintiff.

Jonathan H. Alden, Tallahassee, FL, for Third Party Defendant/Cross Plaintiff.

## ORDER ON COMMITTEE'S MOTION FOR SUMMARY JUDGMENT ON THIRD PARTY CLAIM

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court to consider the Motion for Summary Judgment filed by the Official Committee of Unsecured Creditors (the "Committee"), and the Objection to the Committee's Motion for Summary Judgment filed by the Florida Department of Environmental Protection (the "State" or the "Department"). In its Motion, the Committee requests that this Court enter a final summary judgment in its favor on its third party claim against the State, and determine that the State "does not have any lien or right of setoff in this bankruptcy case."

### Background

The Debtor, Tower Environmental, Inc., is an environmental consulting firm which provided labor, material, and services for the assessment and remediation of contaminated properties.

An involuntary petition against the Debtor was filed under Chapter 7 on July 20, 1995. No order for relief was entered under Chapter 7. With the Debtor's consent, an order for relief under Chapter 11 was entered on August 24, 1995. The Debtor proposes to liquidate all of its assets in this Chapter 11 case.

By Florida Statute § 376.3071, the Florida Legislature created the Inland Protection Trust Fund (the "Fund"). Fla. Stat. § 376.3071(3). The Fund is administered by the Department of Environmental Protection (the "Department"). Fla. Stat. § 376.3071(3). The Department is an administrative unit within the executive branch of Florida's state government. Fla. Stat. §§ 20.03 and 20.04. The purpose of the Fund is to serve as a repository for funds which will enable the Department to respond without delay to incidents of inland contamination related to the storage of petroleum and petroleum products in order to protect the public health, safety, and welfare and to minimize environmental damage. Fla. Stat. § 376.3071(2). The Fund is funded by certain excise taxes, by a loan from the Florida Coastal Protection Trust Fund, and by all penalties, judgments, recoveries, reimbursements, and other fees and charges credited to the Fund relating to the implementation of the Fund. Fla. Stat. § 376.3071(6). An owner, operator, or his or her designee of a site which is eligible for restoration funding assistance is entitled to reimbursement from the Fund of allowable costs for completed program tasks, subject to specified statutory conditions. Fla. Stat. § 376.3071(12). From the Fund, the Department shall reimburse the actual and necessary costs of site rehabilitation. Fla. Stat. § 376.3071(12). Procedures for initiating and conducting site rehabilitation, maintaining records, and applying for reimbursement are established. Fla. Stat. § 376.3071(12). The Department is authorized to audit restoration costs, and is required to seek recovery of overpayments based on the findings of the audits. Fla. Stat. § 376.3071(12).

In this case, the Debtor's principal assets consist of rights to reimbursement from the Fund for both completed and pending projects for the assessment and remediation of contaminated sites. The aggregate amount potentially reimbursable with respect to these projects is estimated to be approximately $14,500,000.

The State filed a Proof of Claim in the Debtor's Chapter 11 case on December 11, 1995, in the amount of $1,014,828.00, and an amended Proof of Claim in the same amount on March 14, 1996. The claim as amended was filed as an unsecured, nonpriority claim, and is for "reimbursement of overpayment of disallowed claimed costs, and investigative

costs and fees." Audit Reports are attached to the Proof of Claim to substantiate the disallowance of certain costs previously paid to the Debtor.

Barnett Bank of Florida (Barnett) commenced this adversary proceeding by filing a Complaint to Determine the Validity, Priority and Extent of Barnett's Lien on Property of the Estate. In the Complaint, Barnett asserts that it is a secured creditor of the Debtor, and that its claim against the Debtor is secured by a valid and perfected first lien on certain property of the Debtor. Barnett asserts that its collateral includes the receivables from the State arising from the state reimbursement programs. Barnett named the Debtor as defendant in the action.

The Committee intervened in the adversary proceeding, claiming an interest in the property subject to the action, and filed a third party complaint against the State. The third party complaint alleges that the State had informally asserted a right of setoff against the Debtor's "completed/submitted reimbursement packages," but that the State "has no such right of setoff, or in the alternative, should be estopped from asserting such right."

The Committee filed its Motion for Summary Judgment on May 31, 1996, contending that it is entitled to summary judgment on two general grounds. First, the Committee contends that the State is not authorized to setoff mutual debts relating to the Fund. In support of this contention, the Committee asserts that Fla. Stat. § 376.3071, which establishes the programs for remediation of contaminated sites, does not contain any provision authorizing a right of setoff, and that no right of setoff exists independent of a statute creating it. The Committee contends that since Fla. Stat. § 376.3071 provides for the recovery of overpayments pursuant to a proceeding filed in court, the statute therefore indicates that no right of setoff exists, since such a right is a self-help remedy which would not require court authorization. Second, the Committee contends that the State should not be permitted to assert a right of setoff even if the authority does exist to assert the right. In support of this contention, the Debtor asserts that the Debtor's

claims for reimbursement from the State are contingent and unmatured, that the Debtor is not the real party in interest as to the reimbursement claims against the State, and that the State has no liability for the reimbursement since the reimbursement comes from the Fund.

In response, the State claims that its right to setoff stems from Fla. Stat. § 17.0415, which provides that the state comptroller is authorized to settle accounts of the various state departments and agencies, and that one authorized mechanism for settling the accounts is to set off amounts owed by any agency of the state to a third party against any amounts owed to any agency of the state by that third party. The State also asserts that the Debtor's claims against the State are matured because the Debtor's right to reimbursement matures at the time that the remedial work is performed on the contaminated site.

On February 8, 1996, the Debtor filed a Motion to Approve Agreement with State of Florida, and the agreement set forth in the Motion contains terms relevant to this controversy. The motion was granted and the agreement was approved by order entered March 14, 1996. The necessity for the agreement arose because of the Debtor's sale of its assets, including its claims for reimbursement against the State, to Remediation Services Corporation. The purpose of the agreement essentially was to provide that "[t]he State's Setoff claim, if any, shall be transferred from the Reimbursement Claims to the Sale Proceeds," to the same extent and in the same priority as the State's claim existed before the sale. (Motion, paragraph 11). Paragraph 7 of the Motion provides that the State asserts its right of setoff as to "the Debtor's claims against the State; including those Reimbursement Claims of the Debtor represented by thirty-five (35) completed and submitted applications for reimbursement of pre-petition costs incurred by the Debtor (a list of which is attached hereto as Exhibit "A")." The list attached as Exhibit "A" identifies 35 contracts with Application Submission Dates ranging from February 27, 1995, through June 1, 1995.

As stated, the Involuntary Petition was filed against the Debtor on July 20, 1995, and the Order for Relief under Chapter 11 was entered on August 24, 1995.

## Discussion

Section 362(a)(7) of the Bankruptcy Code provides that a voluntary or involuntary petition operates as a stay of the setoff of any debt owing to the debtor that arose before the commencement of the case against any claim against the debtor.

Section 553 of the Bankruptcy Code governs the application of setoff rights in bankruptcy cases. Subsection 553(a) of that section provides:

§ 553. Setoff

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, . . .

■■ Several principles under this section are well-established. First, any right of setoff allowed under § 553 is permissive and within the discretion of the court, and is not mandatory. *In re Aquasport, Inc.*, 155 B.R. 245, 247 (S.D.Fla.1992), aff'd. without op., 985 F.2d 579 (11th Cir.1993). "The right to setoff is automatically stayed [by § 362(a)] until the matter is presented to the court for a determination of the validity of the setoff and the need for a stay in order to efficiently manage the bankruptcy proceedings." *In re Rush–Hampton Industries, Inc.*, 98 F.3d 614, 616 (11th Cir.1996). Second, a right of setoff must exist under nonbankruptcy law before § 553 becomes operative. It is generally held that the section limits the application of setoff rights already available under nonbankruptcy law, but that it does not create or expand setoff rights beyond those that exist independently. *In re Aquasport*, 155 B.R. at 248. Consequently, courts typically review applicable nonbankruptcy law to determine whether a valid setoff right exists before they determine whether it would be appropriate to allow it. *Id.*

■ If the right of setoff exists under nonbankruptcy law, then § 553 provides that, with few exceptions, the Bankruptcy Code does not affect the right of a creditor to offset a mutual debt that arose before the commencement of the case against a claim of the creditor against the debtor that arose before the commencement of the case. *See In re Braniff Airways, Inc. v. Exxon Company*, 814 F.2d 1030 (5th Cir.1987).

■ Finally, the party asserting the right to setoff has the burden of proof with respect to its validity and propriety. *In re Aquasport, Inc.*, 155 B.R. at 248.

## Setoff under Nonbankruptcy Law

Trust funds such as the Fund, consisting of moneys received by the State which under law are segregated for a purpose authorized by law, are deposited in the State Treasury and accounted for by the Treasurer and the Department of Banking and Finance. Fla. Stat. § 215.32. Moneys in such funds are disbursed by state warrant, drawn by the Comptroller upon the State Treasury. Fla. Stat. § 216.331.

The State asserts that the source of its right to setoff is Fla. Stat. § 17.0415. That section is contained in the chapter of the Florida Statutes regarding the powers and duties of the state's Comptroller, and provides:

17.0415. **Transfer and assignment of claims**

In order to facilitate their collection from third parties, the Comptroller may authorize the assignment of claims among the state, its agencies, and its subdivisions, whether arising from criminal, civil, or other judgments in state or federal court. The state, its agencies, and its subdivisions, may assign claims under such terms as are mutually acceptable to the Comptroller and the assignee and assignor. The assigned claim may be enforced as a setoff to any claim against the state, its agencies, or its subdivisions, by garnishment or in the same manner as a judgment in a civil action.

The State contends that this statute appears in the general laws concerning the state's executive branch because it is the product of the general historical principle that one party should not be compelled to pay another party if the other party owes him an amount exceeding his liability. The State contends that the purpose of the statute is to allow the various agencies and departments to "pool" any claims owed to the State to facilitate the collection of funds.

The Committee contends that Fla. Stat. § 376.3071(12)(m), a subsection of the statute creating the Fund which deals with several aspects of reimbursement for cleanup expenses, evidences an express legislative intent not to authorize a right of setoff with respect to claims arising under the program. That section provides:

(m) Audits.—

1. The department is authorized to perform financial and technical audits in order to certify site restoration costs and ensure compliance with this chapter. The department shall seek recovery of any overpayments based on the findings of these audits. The department must commence any audit within 5 years after the date of reimbursement, except in cases where the department alleges specific facts indicating fraud.

2. Upon determination by the department that any portion of costs which have been reimbursed are disallowed, the department shall give written notice to the applicant setting forth with specificity the allegations of fact which justify the department's proposed action and ordering repayment of disallowed costs within 60 days of notification of the applicant.

3. In the event the applicant does not make payment to the department within 60 days of receipt of such notice, the department shall seek recovery in a court of competent jurisdiction to recover reimbursement overpayments made to the person responsible for conducting site rehabilitation, unless the department finds the amount involved too small or the likelihood of recovery too uncertain.

According to the Committee, the right of setoff is a self-help remedy that does not require court authorization. Since the statute provides for recovery "in a court of competent jurisdiction," the Committee interprets the statute as contrary to the position that the State has the automatic right of setoff.

No case law has developed regarding the State's right to set off claims arising under the reimbursement program. The Court concludes, however, that the program does not preclude a right of setoff in those situations in which a person or entity that owes money to the Fund also holds a claim against the Fund, provided the elements of setoff are otherwise present.

■ Florida Statute § 17.0415, as cited by the State, provides that "(t)he assigned claim may be enforced as a setoff to any claim against the state ... by garnishment or in the same manner as a judgment in a civil action." As set forth above, this section appears in the Chapter regarding the powers and duties of the state comptroller.

The application of the section is not limited to any particular type of claim held by or against the State. The section authorizes the assignment of claims among the state, its agencies, and its subdivisions, and provides that the assigned claim may be enforced as a setoff. The statute expresses the clear intent that the state collect claims which it has against third parties. In view of the expressed purpose of the statute, the Court concludes that the specific reference to the setoff of assigned claims does not preclude the setoff of claims which have not been assigned. It would be illogical to conclude that the statute provides for the setoff of assigned claims, but prohibits the setoff of claims which do not need to be assigned among the agencies or subdivisions of the state.

■ With respect to Fla. Stat. § 376.3071 as cited by the Committee, the section provides that the State may perform the audits necessary to determine whether an overpayment has been made, and if it is determined that an overpayment has been made, the State must seek to recover the overpayment by instituting judicial proceedings. The Section does not address the situation in which

the overpaid owner or contractor continues to have claims for reimbursement against the State, and therefore the section neither supports nor negates the existence of a right of setoff. A right of setoff, however, may be asserted by a defendant in a pending lawsuit for the purpose of diminishing or extinguishing the claim of the plaintiff. 20 Am Jur 2d, *Counterclaim, Recoupment, and Setoff*, § 6 (1995). In other words, such a right may be exercised in the context of judicial proceedings, and not solely as a self-help remedy as contended by the Committee. Accordingly, the presence of the provision authorizing the recovery of overpayments "in a court of competent jurisdiction" cannot be construed as evidencing a legislative intent to preclude the State's right of setoff with respect to claims relating to the Fund.

The Court concludes that the general right of setoff exists for the State even with respect to claims which are not assigned among its agencies, and that the provisions of the statute controlling the Fund do not preclude the State from exercising this right with respect to amounts due to and from the Fund by a third party.

■ In this case, however, issues of fact exist regarding a fundamental element of the general right to setoff. It is well-established in Florida that contingent or unmatured claims may not be used to effect a setoff. In *In re Aquasport, Inc., supra,* for example, the Bankruptcy Court found that a claim was unliquidated and contingent and therefore not available for setoff. "[T]he fund in question would not be available for setoff because contingent and unmatured claims cannot be used as a setoff under Florida law." *In re Aquasport*, 155 B.R. at 247, quoting 115 B.R. 720, 722. The District Court affirmed the Bankruptcy Court's decision that "a right of setoff is not available to ITT in the present case," noting that ITT had stipulated to the contingent nature of its claim. *In re Aquasport*, 155 B.R. at 248.

An owner or designee's claim against the State for reimbursement from the Fund is subject to several statutory and regulatory provisions relating to the allowability of costs, the proper submission of applications which satisfy the specific criteria and infor-mation requirements, and ultimately the approval of the State. Conditions for entitlement to reimbursement are established. The applications must be prepared on designated forms, must include documentation that satisfies the State that the work has been performed according to state guidelines, and must be accompanied by a report of a certified public accountant. No reimbursements can be made until the applications are approved.

In this case, the Debtor and the State agreed that the State's claim to setoff related to the Debtor's claims for reimbursement against the State, including those represented by 35 specific applications identified in an attachment to the Motion to approve an agreement between the parties. The identified applications were each submitted to the State for processing and approval, as reflected by the submission dates listed on the attachment to the Motion. There is no record, however, regarding either the disposition of the applications following their submission, or the current status of the applications. There is no record, for example, as to whether some or all of the specified applications have been approved by the State, whether further information was requested with respect to some or all of the applications, or whether some of the applications remain pending for other reasons. If some of the Applications were approved prepetition, there is no record as to the amounts determined to be owed to the Debtor on particular applications, or whether the Debtor is entitled to an immediate right to payment on the claims.

The Court therefore concludes that the Committee is not entitled to summary judgment because issues of fact exist regarding whether the Debtor's claims against the State are contingent and unliquidated as required by state law.

### Setoff under Bankruptcy Law

■ Further, as indicated above, § 553 of the Bankruptcy Code limits the application of setoff rights that otherwise may be available. Consequently, even if a right to setoff does exist under Florida law, the exercise of

the right may not be permitted under the Bankruptcy Code unless the requirements of § 553 are satisfied. The Fifth Circuit Court of Appeals discussed these requirements in *In re Braniff Airways, Inc.*, 814 F.2d 1030, (5th Cir.1987):

> [t]o maintain a right of setoff, the creditor must prove the following:
>
> 1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.
>
> 2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.
>
> 3. The debt and the claim are mutual obligations.

*In re Braniff*, 814 F.2d at 1035, quoting *In re Nickerson & Nickerson, Inc.*, 62 B.R. 83, 85 (Bankr.D.Neb.1986). The Fifth Circuit also stated that "[t]he mutuality element is lacking if a party attempts to setoff a pre-petition debt against a post-petition claim." *In re Braniff*, 814 F.2d at 1036.

Judge Proctor subsequently discussed the requirements of Section 553 in *In re Apex International Management Services, Inc.*, 155 B.R. 591 (Bankr.M.D.Fla.1993).

> Section 553 does not mandate that the debt and claim be of identical character or that they arise from the same transaction. "The only requirement is that the debt and claim be mutual—that something is owed by both sides."

> . . . . .

> Mutuality also requires "that the debts must be in the same right and between the same parties standing in the same capacity." In Matter of Romano, 52 B.R. 586 (Bankr.M.D.Fla.1985). This means that *the identity of the parties determines whether mutuality exists and, in turn, the timing of the obligations determines the identity or capacity of the parties. Because the pre-petition debtor acts in a different capacity than does the post-petition debtor, debts that arose at different times, one pre-petition and one post-petition, lack mutuality and set-off may not be had under § 553 .*

*In re Apex International,* 155 B.R. at 593–94. (Emphasis supplied).

In Chapter 11 cases, therefore, debts that arose prepetition may not be set off against debts that arose postpetition. This rule is consistent with the general requirement that debts must be "mutual" for purposes of setoff, and is also in accordance with the express language of Section 553 that an existing right of setoff is not affected as to a debt owed by a creditor to the debtor "that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case." Both claims subject to the setoff must have arisen prepetition.

In this case, the claims at issue are:

1. The claim by the State against the Debtor to recover payments previously made from the Fund to the Debtor for reimbursement of costs that were subsequently disallowed.

2. The claims by the Debtor against the State for reimbursement from the Fund of the costs incurred by the Debtor in remediating contaminated sites pursuant to the State's reimbursement program established under Fla. Stat. § 376.3071. As set forth above, the Debtor and the State have agreed that these claims include thirty-five specified applications submitted to the State prepetition.

Both claims stem from the operation of the Fund. A stated purpose of the Fund is to reimburse owners or operators of eligible sites, or their designees, of the costs of completed program tasks. Fla. Stat. § 376.3071(12). Specific sources of funds for the Fund are the penalties, judgments, recoveries, reimbursements, and other fees and charges credited to the Fund relating to the implementation of the Fund. Fla. Stat. § 376.3071(6).

The Committee contends that the State has no liability to the Debtor since the payments come from the Fund. However, the Fund is administered by the Department, Fla. Stat. 376.3071(3), and the Department is an administrative unit within the executive branch of the state government. Fla. Stat.

§§ 20.03 and 20.04. The Fund consists of moneys received by the State which under law are segregated for a purpose authorized by law. Fla. Stat. § 215.32. These moneys are deposited into the State Treasury. Fla. Stat. § 215 .32. Disbursements are made by state warrant, drawn by the Comptroller upon the State Treasury. Fla. Stat. 216.331. Accordingly, the State is liable for payments from the Fund, consistent with the provisions of the statute governing the Fund.

The Committee contends that the Debtor is not the real party in interest. However, the claims by the Debtor against the State are for reimbursement from the Fund of the costs incurred by the Debtor in remediating contaminated sites pursuant to the State's reimbursement program established under Fla. Stat. § 376.3071. Throughout the statute creating the Fund and the program are the provisions for reimbursement of actual costs and reasonable expenditures for completed program tasks. *See* Fla. Stat. § 376.3071(12). The Debtor must have paid its subcontractors before being reimbursed. The claims of the Debtor against the State cannot be paid unless they are, in fact, the claims of the Debtor. Accordingly, the Debtor is the party interested in the payments from the State in reimbursement of the costs and expenditures of the Debtor.

However, issues of fact do exist concerning whether the claims are mutual within the meaning of § 553(a) of the Bankruptcy Code.

In this case, it appears that the claim held by the State against the Debtor for overpayments arose prepetition. Although the exact reimbursement dates cannot be determined from the record, the Audit Reports attached to the Proof of Claim filed by the State reflect that the payments were made to the Debtor or the Debtor's predecessor based on applications submitted no later than June 7, 1993. The involuntary Bankruptcy petition was filed against the Debtor on July 20, 1995, and the Order for Relief was entered on August 24, 1995, approximately two years after the date that the last application was submitted. Further, in its Objection to the Committee's Motion for Summary Judgment, the State represented that it "asserts a right to set off the amounts it has overpaid the Debtor *pre-petition* on reimbursement claims." (Objection, p.5) (Emphasis supplied). Accordingly, it appears that the State's claim against the Debtor arose before the commencement of the case within the meaning of § 553 of the Bankruptcy Code.[1]

The Debtor's claim against the State, however, is based on its rehabilitation of contaminated sites. Fla. Stat. § 376.3071(12)(g) sets forth the procedure by which such owners, operators, or their designees, may apply for reimbursement.[2] Fla. Stat. § 376.3071(12)(h)

---

1. Additionally, although the State's proof of claim is based on audit reports, the Court notes that the Committee attached to its Counterclaim against Barnett a copy of a Plea Agreement dated March 21, 1994, in a criminal action in the Florida state courts: *State of Florida v. The Consolidated Credit Group, Inc.*, Case No. F94–2876, Circuit Court, Thirteenth Circuit of Florida, Hillsborough County, Florida. In the Plea Agreement are the following obligations of the Debtor: (a) foregoing certain markups on pending and future applications in the total amount of $1,555,040; (b) restitution of $760,900 to the Fund for repayment of "funds received through improper misrepresentations," with such restitution being paid in an immediate lump sum ($400,000) plus monthly installments (of $72,180) beginning April 1, 1994, and ending August 1, 1994; (c) payment of a fine totalling $1,000,000 in monthly installments (of $52,632) beginning September 1, 1994, and ending March 1, 1996; (d) payment of costs of investigation of $101,000 in the following manner: (i) to the Department (a total of $66,000, in monthly installments of $3,474 beginning September 1,

1994, and ending March 1, 1996), (ii) to the Florida Department of Law Enforcement (a total of $20,000, in monthly installments of $1,053 beginning September 1, 1994, and ending March 1, 1996), and (iii) to the Office of Statewide Prosecution (a total of $15,000, in monthly installments of $789 beginning September 1, 1994, and ending March 1, 1996).

2. Fla. Stat. § 376.3071. **Inland Protection Trust Fund; creation; purposes; funding**....

(12)(g) Application for reimbursement.—Any eligible person who performs a site rehabilitation program or who performs site rehabilitation program tasks such as preparation of site rehabilitation plans or assessments; product recovery; cleanup of groundwater or inland surface water; soil treatment or removal; or any other task identified by department rule developed pursuant to paragraph 5(b), may apply for reimbursement. Such applications for reimbursement must be submitted to the department on forms provided by the department, together with evidence documenting that

sets forth the State's process for reviewing the applications.[3] Fla. Stat. § 376.3071(12)(m) sets forth the procedure by which the State may review the applications even after reimbursement has been made.[4]

As shown by the statutes cited above, the site work must qualify for reimbursement. After the site work is performed, the owner, operator, or designee must submit its application for reimbursement to the State for approval. The application must be on a form supplied by the State, and must contain sufficient documentation in the State's judgment to evidence that the rehabilitation was completed in compliance with State rules. The application must also include a report of a certified public accountant following his examination of the application and documentation. After the application has been submitted, the State may request, within a specified time period, that the applicant furnish additional information. Section 376.3071(12)(h) provides that the State may "deny or approve" the request, and must furnish the applicant with a written explanation of the denial or approval. The date by which the State must deny or approve the application may depend on the applicant's promptness in responding to any request for additional information, since the deadline for approval is triggered by the "receipt of the last item of timely requested additional material."

In this case, it is undisputed that the Debtor completed and submitted 35 applications with respect to specific projects prior to the commencement of this case. The record does not reflect, however, whether the applications have been denied or approved as determined by the State pursuant to Section 376.3071(12)(h), or, if approved, whether the approval occurred prepetition or postpetition. Without such a showing in the record, the Court cannot determine whether the Debtor's claim against the State is a debt owed by the State that arose before the commencement of the case that is "mutual" to the claim of the State against the Debtor for prepetition overpayments, within the meaning of Section 553 of the Bankruptcy Code.

### Conclusion

Section 553(a) provides that, with certain exceptions, the Bankruptcy Code does not affect a creditor's right to offset a mutual debt owed by the creditor to the debtor that arose before the commencement of the case against a claim of the creditor against the debtor that arose before the commencement of the case. The section limits the operation of setoff rights that exist under state law. In this case, questions of fact exist regarding whether the Debtor's claim against the State is contingent in nature, so that setoff would

---

site rehabilitation program tasks were conducted or completed in accordance with department rule developed pursuant to paragraph 5(b), and other such records or information as the department requires. The reimbursement and supporting documentation shall be examined by a certified public accountant in accordance with the standards established by the American Institute of Certified Public Accountants. A copy of the accountant's report shall be submitted with the reimbursement application. Applications for reimbursement shall not be approved for site rehabilitation program tasks which have not been completed, except for the task of remedial action.

3. Fla. Stat. § 376.3071. **Inland Protection Trust Fund; creation; purposes; funding** . . . .

(12)(h) Review.—
1. Provided there are sufficient unencumbered funds available in the Inland Protection Trust Fund, the department shall have 60 days to determine if the applicant has provided sufficient information for processing the application and shall request submission of any addi-

tional information that the department may require within such 60–day period. . . .
2. The department shall *deny or approve* the application for reimbursement within 90 days after receipt of the last item of timely requested additional material, or, if no additional material is requested, within 90 days of the close of the 60–day period described in subparagraph 1
. . . .

(Emphasis supplied.)

4. Fla. Stat. § 376.3071. **Inland Protection Trust Fund; creation; purposes; funding** . . . .

(12)(m) Audits.—
1. The department is authorized to perform financial and technical audits in order to certify site restoration costs and ensure compliance with this chapter. The department shall seek recovery of any overpayments based on the findings of these audits. The department must commence any audit within 5 years after the date of reimbursement, except in cases where the department alleges specific facts indicating fraud.

not be available under state law. Additionally, related questions of fact exist regarding whether the Debtor's claim against the State arose before the commencement of the bankruptcy case, which necessarily affects whether the limitations on setoff imposed by § 553 of the Bankruptcy Code apply.

Accordingly:

**IT IS ORDERED** that the Motion for Summary Judgment filed by the Official Committee of Unsecured Creditors with respect to its third party claim against the State of Florida, Department of Environmental Protection is denied, without prejudice.