ROBERT E. HARDING, receiver, *vs.* THE BROADWAY
NATIONAL BANK OF CHELSEA.

Suffolk.   November 14, 1935. — February 28, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & QUA, JJ.

*Bank and Banking.   Contract,* What constitutes, Credit agreement with
   bank. *Bills and Notes,* Maturity. *Practice, Civil,* Exceptions: whether
   error harmful.

An original contract in writing between a bank and its depositor, pro-
   viding that, in case the depositor became insolvent or failed at once
   to notify the bank of a material change in his financial standing as
   shown in the contract, "all or any of the claims or demands against
   the" depositor "held by" the bank "shall at the option thereof im-
   mediately become due and payable," was a contract separable from
   a note of the depositor later given to the bank and not embodying
   it; and insolvency of the depositor and his failure to notify the bank
   of change in his financial condition did not justify the bank in dis-
   honoring the depositor's checks and applying his deposits toward
   payment of such note before its due date.
An action by the receiver of an insolvent corporation against a bank to
   recover the amount of the corporation's deposit wrongfully applied
   by the bank toward payment of the corporation's unmatured note
   was not defeated by the bank's again applying the deposit after
   maturity of the note.
The record before this court disclosing that the granting, by a judge hear-
   ing an action at law without a jury, of a request for a ruling that "on
   all the evidence and the law the plaintiff is entitled to recover," was
   treated by him as a request for a finding of fact, an exception thereto
   was overruled, no harmful error being shown.

CONTRACT.   Writ dated March 17, 1933.

The action was heard in the Superior Court by *Donnelly,* J.,
without a jury.   He found for the plaintiff in the sum of
$1,960.73.   The defendant alleged exceptions.

*C. A. Warren,* (*N. R. Voorhis* with him,) for the defendant.
*M. Witte,* for the plaintiff.

PIERCE, J.   This is an action of contract brought by the
plaintiff, as the receiver for the Francis & Badger Motor
Co., against the defendant bank for an alleged breach of
contract with respect to a credit balance of the motor

company. The answer was a general denial and payment. The case was tried in the Superior Court without a jury. The trial judge found for the plaintiff and assessed damages in the sum of $1,960.73.

The questions of law raised by the exceptions relate to certain requests for rulings by the plaintiff granted by the judge, and to certain requests for rulings by the defendant which the judge denied. The material facts shown by the record are in substance as follows: The Francis & Badger Motor Co., a Massachusetts corporation, was engaged in distributing automobiles. In 1921 the motor company (hereinafter referred to as the depositor) desired to open a commercial account in the defendant bank, for the purpose of depositing items to its credit to be drawn against, and also to establish credit with the defendant so that the depositor might borrow money from time to time as agreed on. The depositor's treasurer informed the president of the defendant bank of the relationship it desired to establish. The bank thereupon issued to the depositor a paper, popularly known as a credit statement, the blanks on which were to be filled out by the depositor. After the credit statement was filled out, signed and delivered by the depositor through its treasurer to the defendant, the account was opened.

From 1921 to 1932 the defendant made loans to the depositor, receiving the latter's promissory notes as evidence thereof, discounted its notes receivable, furnished it with money to take up and pay drafts for the price of automobiles purchased, and in general furnished financial accommodation to the depositor as needed.

Among such loans was one made on January 16, 1930, of $3,000 for which the bank received the borrower's promissory note, indorsed personally by Badger, its treasurer, and by Francis, its president. This loan was reduced and new notes given for the reduced amounts from time to time, the last renewal being on June 8, 1932, when, at the request of Francis, then treasurer, it was renewed for $2,400 by note of that date, payable to the order of the defendant in one month.

New credit statements were furnished by the depositor to the defendant, at the latter's request, from time to time, during the period in which they did business. The last of such statements which the defendant says it has received is dated August 17, 1931, and purports to disclose the financial condition of the depositor on July 31, 1931. At the top of each statement signed by the depositor there was printed the following: "For the purpose of procuring and establishing credit from time to time with the above Bank, the undersigned submits the following as being a true and correct statement of $\frac{his}{their}$ financial condition on the 31st day of July, 1931. $\frac{I}{We}$ agree that if any change occurs that materially reduces the assets or ability of the undersigned to pay all claims or demands against $\frac{me}{us}$ the undersigned will immediately and without delay notify the said Bank, and unless the Bank is so notified it may continue to rely upon the statement herein given as a true and accurate statement of the financial condition of the undersigned: In consideration of the granting of any credit by said Bank, the undersigned agree that in case of failure or insolvency on the part of the undersigned, or in the event of it appearing at any time that any of the following representations are untrue, or in case of the occurrence of such change as aforesaid or of failure to notify such change as above agreed, all or any of the claims or demands against the undersigned held by said Bank shall at the option thereof immediately become due and payable. *Further*, that the exercise of, or omission to exercise such option in any instance, shall not waive or affect any other or subsequent right to exercise the same."

All loans made by defendant and all loans and notes renewed, including the renewal note of June 8, 1932, for $2,400 were in reliance on the contents of the latest credit statement which the defendant had at the time received, but there is no direct evidence that the defendant so informed the depositor.

For a considerable period of time prior to June 8, 1932, the depositor was in financial straits. Taxes on real estate were unpaid, mortgage interest had accumulated, and the business was being carried on at a loss. In May, 1932, Francis, who at that time was treasurer as well as president, found a purchaser for the business, and a scheme was evolved whereby the purchaser was to obtain the business after the corporation had gone through bankruptcy. On June 3, 1932, unsuccessful attempts were made to induce certain employees of the corporation, to whom the latter was indebted for wages, to become petitioning creditors in bankruptcy proceedings. On June 11, 1932, the defendant through one of those employees, learned of the financial condition of the depositor and of the proposed bankruptcy. On the same day the defendant communicated with Francis, who admitted the bad financial condition of the company and said he had not mentioned it three days earlier, when the note of June 8 had been given, because he was ashamed to do so. Tierney, acting for the defendant, then pointed out the acceleration provision in the credit statement, and stated that the defendant was calling the note immediately. On June 11, 1932, therefore, the defendant, pending Francis's attempts to raise money, charged the depositor's account with the amount of the balance which was $1,673.64, and placed the sum in the form of a cashier's draft. Payment on the depositor's checks presented that day was refused by the bank. On June 15, 1932, the defendant received $25.50 in settlement of a collection item held for the depositor, and that amount after being credited to the depositor's account was similarly charged off. On June 23, 1932, Francis not being able to satisfy the bank in his attempts to raise money, the defendant indorsed, as credits on the note, the amounts of the cashier's drafts and cancelled the drafts.

On and after June 8, 1932, the only unsecured indebtedness of the depositor to the defendant was on said $2,400 note, no part of which has been paid, except by the appropriation of the sums of $1,673.64 and $25.50, as aforesaid.

The depositor's petition for dissolution was filed June

21, 1932.   An order of notice issued, returnable on July 20, 1932.   On September 23, 1932, the Superior Court entered an order of dissolution under G. L. (Ter. Ed.) c. 155, § 50, and appointed the plaintiff receiver.   The defendant had no notice of the dissolution proceedings until it received a letter from the receiver requesting information.   On March 1, 1933, the defendant filed in the receivership proceedings a proof of claim in the amount of $693.23, alleged to be the balance due with interest on the note of June 8, 1932.

The judge found that in extending credit, including the loan evidenced by the note of June 8, 1932, the defendant relied on the credit statements, that the depositor was insolvent for a long time prior to said date, that the credit statements were not physically incorporated in, nor given contemporaneously with, said note, and that the bank had no authority to accelerate the maturity of the note unless the clause in the credit statement conferred that right; and he ruled that the bank had no right by virtue of the acceleration clause or otherwise to appropriate the depositor's balance as it did.

The questions of law raised by the defendant are: "*First.* As to the defendant's right to appropriate and apply the balances due to the depositor, on its checking account, in partial payment of its indebtedness to the defendant, represented by its promissory note not then matured; and — *Second.* If it did not have such right, will not such appropriation and application be given effect upon the subsequent maturity of the note?"

The trial judge, in connection with his ruling disposing of the defendant's contention respecting its authority to appropriate and apply the balance to the credit of the depositor in its checking account in reduction of its loan in advance of the stated maturity of the note, made the additional finding "that the credit statements were in no way physically incorporated in nor given contemporaneously with said note dated June 8, 1932"; and that "at no time did the depositor, or anyone having authority so to do, consent to the acceleration of the maturity of said

note by the defendant or to the appropriation of any of its balances before the maturity of the note as written, unless the defendant had such authority by virtue of said credit statements, or any of them, or any provisions thereof." And he ruled "that the maturity of said note could not be accelerated by virtue of any of said credit statements, or any provisions thereof, and that the defendant was not justified in appropriating the depositor's balance or balances on June 11 and June 15, 1932, respectively, being before the maturity of said note as written."

Under normal circumstances a bank may set off a debtor's deposit against a matured obligation of the debtor to it. *Furber* v. *Dane,* 203 Mass. 108, 117, and cases cited. *Howard* v. *Barnstable County National Bank of Hyannis,* 291 Mass. 131. No such right exists in favor of a bank where the debtor's obligation to it is unmatured at the time of the attempted set-off. *Spaulding* v. *Backus,* 122 Mass. 553. *Wiley* v. *Bunker Hill National Bank,* 183 Mass. 495, 498. *Putnam* v. *United States Trust Co.* 223 Mass. 199, 202. If bankruptcy had intervened before the maturity of the note it would have been a provable debt at once and could have been set off without awaiting its maturity. *Studley* v. *Boylston National Bank,* 229 U. S. 523. Bankruptcy Act, §§ 63, 68a, 30 U. S. Sts. at Large, 562, 565. Likewise under our insolvency law. *Demmon* v. *Boylston Bank,* 5 Cush. 194. The mere insolvency of the depositor before the maturity of the note did not accelerate its maturity. *Heywood* v. *Perrin,* 10 Pick. 228, 230. So long as the balance of the account to the credit of the depositor exceeds the amount of the debt due and payable by him to the bank, the bank is bound to honor his checks to the extent of the excess, and is liable to an action by the depositor if it does not. *National Mahaiwe Bank* v. *Peck,* 127 Mass. 298, 300. The right of a bank to set off deposits against a debt due or to become due, however, may be waived by contract. *Boston-Continental National Bank* v. *Hub Fruit Co.* 285 Mass. 187, 190. Compare *Stetson* v. *Exchange Bank,* 7 Gray, 425, 428.

It is the defendant's contention in the case at bar that

the terms of the credit statement added to its rights.   It is the plaintiff's contention that the defendant's attempt was ineffective because the contract entered into at the time the depositor signed the credit statement cannot vary the time of maturity expressed in the note of June 8, 1932; and that the credit statement could be asserted only on or after June 11, 1932, by a separate action for breach thereof.   *Central Bank* v. *Willard,* 17 Pick. 150, 153.   *Pitkin* v. *Frink,* 8 Met. 12, 17.   The plaintiff further contends that the defendant's answer is confined to a general denial and payment; that there is nothing in the bill of exceptions to indicate payment, but on the contrary the bill of exceptions shows that the defendant disenabled itself and actually refused to make payment on the depositor's checks; that the sole issue at the trial was whether or not the defendant was justified by the credit statement in appropriating the depositor's balances, and that no question of fraud or rescission was open in this action.

The defendant draws attention to the fact that the action is not on the instrument but is an action on an alleged breach of contract by the bank in failing to pay over the depositor's credit balance.   It contends that the credit statement set forth the terms of the general relationship which was to exist between the depositor and the bank in their future dealings; compare *Fruit Dispatch Co.* v. *Wolman,* 124 Maine, 355, 358; and that it may reasonably be inferred from the provisions of the credit statement that the making of loans, and the accepting of notes of the depositor as evidence thereof, was contemplated by the agreement.   It is the defendant's further contention that although the use of negotiable instruments was contemplated, there is no indication that when such notes were issued they were to supersede the prior general agreement, but rather that they were to be issued in conformity therewith.   Compare *Updike* v. *Manufacturers Trust Co.* 243 App. Div. (N. Y.) 15, 18, affirmed 267 N. Y. 528.

Assuming its contentions to be sound, the defendant alleges that the note and the credit agreement fall within the rule that when several instruments evidence a single

contract between the parties, the instruments will be read together in order to arrive at an interpretation of the contract. *Heywood* v. *Perrin*, 10 Pick. 228, 230. *Franklin Savings Institution* v. *Reed*, 125 Mass. 365. *Skilton* v. *R. H. Long Cadillac La Salle Co.* 265 Mass. 595, 597. Assuming the rule is applicable here, it was not essential that the credit agreement and the negotiable note should be executed at the same time. *McFarland* v. *Boston & Lowell Railroad*, 115 Mass. 63, 66. *Wilson* v. *Powers*, 131 Mass. 539, 540–541. In such situation the instruments in legal contemplation are regarded as having been executed simultaneously or in such order as shall most effectively carry out the expressed intent of the parties. *Wheelock* v. *Freeman*, 13 Pick. 165, 167. *Thayer* v. *Burchard*, 99 Mass. 508, 518. Construing the instruments together the defendant contends that under the acceleration provision of the credit agreement the defendant had the right, for the purpose of enabling it to set off deposits against the depositor's obligation, to declare the instrument of June 8, 1932, matured.

Considering the whole case, we are of opinion that the negotiable note and the acceleration provision of the credit agreement were independent, separate and distinct contracts between the parties, upon the breach of which, by either, the other would have a right of action. We are of the further opinion that the plaintiff's right of action accrued when the alleged wrongful application was made, and such right was not contingent upon any subsequent application on the note by the defendant on July 8, 1932, when the note of June 8, 1932, matured.

The allowance of the plaintiff's request that "On all the evidence and the law the plaintiff is entitled to recover" is a manifest but harmless error. The right to have the exceptions of the defendant sustained because of the error falls within the rule applied in *Patterson* v. *Ciborowski*, 277 Mass. 260, 267, and not within *Pearson* v. *O'Connell*, 291 Mass. 527. It follows that this exception must be and is overruled.

Although the defendant has not specifically argued each

exception saved in its brief we have carefully given consideration to all of them and we are of opinion that the defendant has suffered no substantial harm by the specific rulings made and refused.

*Exceptions overruled.*