**In the Matter of Penn Central Transportation Company, Debtor.**

**PENN CENTRAL TRANSPORTATION COMPANY**

v.

**NATIONAL CITY BANK OF CLEVE-LAND, OHIO, et al.**

No. 70–347.

United States District Court,
E. D. Pennsylvania.

Aug. 5, 1970.

Dechert, Price & Rhoads, Owen B. Rhoads, George J. Miller, Philadelphia, Pa., for Penn Central Transportation Co.

Jones, Day, Cockley & Reavis, Cleveland, Ohio, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for National City Bank of Cleveland, Ohio.

Bullitt, Dawson & Tarrant, Louisville, Ky., White & Williams, Philadelphia, Pa., for Citizens Fidelity Bank & Trust Co.

Dickinson, Wright, McKean & Cudlip, Detroit, Mich., Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for National Bank of Detroit, Mich.

Nixon, Hargrave, Devans & Doyle, Rochester, N. Y., Louis Lipschitz, Philadelphia, Pa., for Lincoln Rochester Trust Co., Rochester, N. Y.

Sullivan & Cromwell, New York City, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Marine Midland Grace Trust Co., New York City.

White & Williams, Philadelphia, Pa., for Central Penn Nat. Bank, Philadelphia, Pa.

Robert B. Barnhouse, Baltimore, Md., for First Nat. Bank of Maryland, Baltimore, Md.

Foley & Lardner, Milwaukee, Wis., Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for First Wisconsin Nat. Bank of Milwaukee, Wis.

Frost & Jacobs, Cincinnati, Ohio, White & Williams, Philadelphia, Pa., for Central Trust Co. of Cincinnati, Ohio.

## OPINION

FULLAM, District Judge.

On June 21, 1970, this Court, per Kraft, J., entered an order approving the petition of the Penn Central Transportation Company for reorganization under section 77 of the Bankruptcy Act (11 U.S.C. § 205, et seq.). Paragraph 10 of the Order (Order No. 1) provided in part as follows:

> "10. All persons, firms and corporations * * * holding for the account of the debtor deposit balances * * * hereby are restrained and enjoined * * * * from offsetting the same * * * against any obligation of the debtor, until further order of this Court."

The Order further provided, in paragraph 7, that such depositories of funds of the debtor were authorized to honor all checks, drafts and vouchers drawn by the debtor against its bank accounts, without regard to the fact that the reorganization petition had been filed and approved. By further orders entered on June 23 and 24, 1970, it was made clear that the honoring of checks and drafts would be without prejudice to any claim the banks might have to priority, by reason of any alleged right of setoff which would otherwise have existed, or otherwise.

When the reorganization petition was filed, the debtor had many millions of dollars on deposit in some 142 bank accounts scattered throughout the United States. Telegrams were sent to each of these 142 banks, advising them of the filing of the reorganization petition, its approval by the Court, and, specifically, the provisions of paragraphs 10 and 7 of the Court's Order.

Notwithstanding the foregoing facts, nine of the banks involved made bookkeeping entries which purported to set off the debtor's funds against various loans allegedly due the banks, and refused to honor checks drawn on such accounts. The total amount of these purported setoffs is in excess of $4,500,000.

On July 14, 1970, the debtor filed a verified petition and obtained an order, returnable July 23, 1970, directing the nine respondent banks to show cause why the Court should not adjudge them in con-

tempt of the Order of June 21, 1970, and require them to honor forthwith the debtor's withdrawals to the full extent of the funds on deposit. The respondent banks, and the approximate amount retained by each, are as follows:

National City Bank of Cleveland, Ohio
$950,000

Citizens Fidelity Bank and Trust Company, Louisville, Kentucky 60,000

National Bank of Detroit, Michigan 1,000,000

Lincoln Rochester Trust Company, Rochester, New York 59,000

Marine Midland Grace Trust Company, New York City 206,000

Central Penn National Bank, Philadelphia, Pennsylvania 1,800,000

First National Bank of Maryland, Baltimore, Maryland 142,000

First Wisconsin National Bank of Milwaukee, Wisconsin 220,000

Central Trust Company of Cincinnati, Ohio 75,000

A hearing was held on July 23, 1970, and evidence and oral argument were presented.

It is conceded that, with one exception, all of the setoffs took place after the respondent banks had actual notice of the filing of the reorganization petition and its approval by the Court, although in several instances, the bookkeeping entries were made before receipt of the telegram which specifically advised of the contents of paragraphs 10 and 7 of the Order. In the case of National City Bank of Cleveland, Ohio, a substantial portion of the setoff occurred on June 20, 1970, before the debtor filed its reorganization petition; however, this bank entered a further setoff of some $27,000 on June 22, 1970, after actual notice of the filing and approval of the reorganization petition.

With respect to all of the post-petition setoffs, the respondent banks raise substantially similar arguments: it is contended that the Order of June 21, 1970 was invalid because entered *ex parte*; that the Court was without jurisdiction to enjoin setoffs in a summary proceeding; that the banks' right of setoff under section 68 of the Bankruptcy Act (11 U.S.C. § 108) can be infringed, if at all, only after the issues are fully litigated in a plenary action. Some of the banks further contend that such plenary action can only be brought in the jurisdiction where the particular bank is located.

■ All of the respondents' contentions overlook the distinctions between ordinary bankruptcy proceedings and reorganization proceedings in general, and the further distinctions between a Chapter X reorganization proceeding and the special provisions of section 77 relating to railroad reorganizations. An ordinary bankruptcy is directed toward the liquidation of the debtor's business, and the distribution of the debtor's assets among its creditors. A Chapter X reorganization is directed toward the continuation of the debtor's business so that it may be restored to solvency, and its creditors ultimately satisfied. A railroad reorganization under section 77 of the Bankruptcy Act involves an additional element, the overriding public interest in the continuation of rail transportation services. *See* In re Central Railroad Company of New Jersey, 273 F.Supp. 282 (D.N.J.1967) aff'd 392 F.2d 589 (3rd Cir. 1968).

■■ Even in an ordinary reorganization under Chapter X, the right of setoff referred to in section 68 of the Act is not automatic, but is available only if the bankruptcy court, in its discretion, determines that permitting the setoff would not frustrate the reorganization process. Susquehanna Chemical Corp. v. Producers Bank and Trust Co., 174 F.2d 783 (3rd Cir. 1949). Clearly, the banks' alleged rights of setoff cannot be regarded as automatic or paramount in a railroad reorganization, in view of the absolute necessity of continuing the operation of trains. *See* Lowden v. Northwestern National Bank and Trust Co., 298 U.S. 160, 56 S.Ct. 696, 80 L.Ed. 1114 (1936). It follows that the *ex parte*

Order here involved did not deprive the respondents of any absolute legal right.

■ The power of the bankruptcy court to proceed summarily in this situation cannot be doubted. As long ago as Continental Illinois National Bank and Trust Co. of Chicago v. Chicago-Rock Island & Pacific Ry. Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935), the Supreme Court held that such power is firmly established, on the basis of the inherent power of a court of equity to protect its jurisdiction, on the basis of the All Writs Statute, 28 U.S.C. § 1651, and on the basis of section 2(15) of the Bankruptcy Act itself. (11 U.S.C. § 11 (15))

The Court's order in the present case did not adjudicate the substance of any claim by the banks. It merely restrained them from exercising the remedy of self-help. There is no suggestion that the debtor is actually bankrupt, or likely to become so. Indeed, it seems quite clear that the total value of the assets of the debtor far exceed its liabilities.

■ The respondent banks argue that this Court's Order No. 1, by enjoining setoffs and at the same time authorizing the honoring of checks, was equivalent to a turn-over order, and thus required plenary proceedings. In this respect, it is argued, the present case differs from the *Continental Bank* case, *supra*, where the summary disposition merely prevented the sale of collateral. From a narrow, conceptualistic viewpoint, this argument has some plausibility. Nevertheless, setting off bank deposits against demand promissory notes is certainly closely analogous to a sale of collateral; and in the declining market of the early nineteen-thirties, requiring the retention of collateral would seem likely to have been attended by consequences at least as serious to the creditor as requiring these respondents to continue to honor checks. Order No. 1 plainly contemplates the continuation of the normal functioning of the debtor's operational bank-accounts, including deposits as well as withdrawals, in the ordinary course of business. The

banks' "security" would not necessarily be significantly impaired.

Be that as it may, it is inconceivable that Congress intended that a railroad under section 77 reorganization should be deprived of the use of its cash, by the very act of filing the reorganization petition. If the respondent banks are correct in their contention that this Court's Order No. 1 was invalid, no railroad could possibly reorganize under section 77.

It is equally obvious that any such order, if it is to be effective, must necessarily be entered *ex parte*. The case of In re Chicago and Northwestern Ry. Co. (Megan v. Continental Illinois National Bank & Trust Company of Chicago), 86 F.2d 508 (7th Cir. 1936) demonstrates the inadvisability of advance notice in such situations. There, a public announcement of impending insolvency made it possible for a bank to exercise its right of setoff before the reorganization petition was filed, and the court held that the propriety of such antecedent setoff could be determined only in plenary litigation.

■ Some of the respondent banks have argued that this Court lacks jurisdiction over them, since section 23(b) of the Act provides that " * * * suits by the receiver and the trustee shall be brought or prosecuted only in the courts where the bankrupt might have brought or prosecuted them if proceedings under this act had not been instituted, unless by consent of the defendant * * *." However, section 77(a) confers upon the reorganization court " * * * exclusive jurisdiction of the debtor and its property wherever located * * *." In my judgment, the choses in action represented by these bank-accounts were and are "property" of the debtor for purposes of section 77(a). Since they were in the actual or constructive possession of the debtor when the petition was filed, they were within the summary jurisdiction of this Court. Harris v. Avery Brundage Co., 305 U.S. 160, 59 S.Ct. 131, 83 L.Ed. 100 (1938); May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870 (1925); see generally: Collier on Bankruptcy, section 23.04[2] (14th Ed. 1969).

For the reasons discussed above, I am satisfied that Order No. 1 in these proceedings was and is valid,[1] and that, with respect to all alleged setoffs exercised by the respondents on or after June 22, 1970, the respondents are in violation of the Order. With respect to the setoff exercised by the National City Bank of Cleveland, Ohio, on June 20, 1970, it is apparent that no violation of the Order is properly chargeable; moreover, the existence of a substantial adverse claim renders inappropriate for summary disposition the question of the validity of that setoff. In re Chicago and Northwestern Ry. Co., *supra*.

The seriousness of the continuing violations of this Court's Order No. 1 cannot be over-emphasized. If all of the 142 depositories had attempted the same disregard of the express terms of the Order, the operation of railroad service by the debtor would have been impossible. Because of the overriding public interests involved, no further delay in compliance can be tolerated. Respondents' derelictions cannot be excused merely because most of the banks did comply with the injunction.

The petition of the debtor asks, *inter alia*, that the respondents be ordered forthwith to comply with Order No. 1. This will be done, but it should be noted that Order No. 1 was self-executing and has not been directly challenged or appealed. The further Order now entered does not detract from or postpone its effectiveness to support the imposition of sanctions for the existing violations. The most that can be said is that prompt compliance may have a mitigating effect in the determination of penalties. Because of the abbreviated nature of the hearing and argument, which were directed principally to the underlying legal issues, the present record is inadequate for proper consideration of possible differentiation among the various respondents as to contumacy and imposition of sanctions. Accordingly, these questions will be held in abeyance for the time being, for later consideration in light of intervening conduct and a more complete record.

### ORDER (NO. 24)

And now, this 5th day of August, 1970, it is ordered that the respondents, viz: National City Bank of Cleveland Ohio, Citizens Fidelity Bank and Trust Company, Louisville, Kentucky, National Bank of Detroit, Michigan, Lincoln Rochester Trust Company, Rochester, New York, Marine Midland Grace Trust Company, New York City, Central Penn National Bank, Philadelphia, Pennsylvania, First National Bank of Maryland, Baltimore, Maryland, First Wisconsin National Bank of Milwaukee, Wisconsin, and Central Trust Company of Cincinnati, Ohio, be, and each of them hereby is, directed forthwith to comply with Order No. 1 of this Court in this proceeding by restoring to the account of the debtor all balances as the same existed on June 21, 1970, and by honoring the debtor's withdrawals, checks and vouchers to the full extent of funds on deposit (without prejudice, as set forth in paragraph 7 of said Order, as amended), and to certify to this Court within 48 hours after receipt of a copy of this Order the fact of compliance herewith.

The foregoing Order is entered without prejudice to the pending application of the debtor for a formal adjudication of contempt and the imposition of sanctions for violations of Order No. 1, all of which matters are held in abeyance until further Order of this Court.

1. For present purposes, I have assumed, without deciding, that invalidity of the Order would be a defense in contempt proceedings.