In re Sandra L. MOREIRA, Debtor.

Sandra L. MOREIRA, Plaintiff,

v.

DIGITAL EMPLOYEES FEDERAL CREDIT UNION, Alan Prindel, Vice President, and Brian W. Ducharme, Collection Manager, Defendants.

Bankruptcy No. 94–43553–JFQ.
Adv. No. 94–4278.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 4, 1994.

Helene B. Page, Worcester, MA, for Sandra L. Moreira.

Peter C.L. Roth, Bingham, Dana & Gould, Boston, MA, for Digital Employees' Federal Credit Union.

### *OPINION*

JAMES F. QUEENAN, Jr., Chief Judge.

This case raises three questions: Is it a violation of the automatic stay for a credit union to "freeze" a debtor's deposit account for the purpose of preserving the credit union's claimed right of setoff against the debtor's loan indebtedness? May the account now be set off against the entire debt balance

even though at the filing the debtor was current on her monthly payments and the credit union had made no attempt to accelerate the debt? Finally, what is the effect upon postpetition setoff rights of a large deposit made shortly before bankruptcy? Complicating the second question is the disputed validity of a clause in the note accelerating the debt in the event of the debtor's bankruptcy. Complicating all three is another clause in the note purporting to grant the credit union a "lien" on the deposit account.

Before the court are three pleadings: (i) the complaint of Sandra L. Moreira (the "Debtor") seeking a mandatory injunction requiring the defendant Digital Employees Federal Credit Union (the "Credit Union") to turn over the balance of the Debtor's deposit account, (ii) the Credit Union's motion to dismiss the complaint, and (iii) the Credit Union's motion for relief from the automatic stay in order accomplish the setoff. I decline to issue the injunction or grant relief from stay, but I do allow the motion to dismiss unless the Debtor amends her complaint to seek relief concerning the prepetition deposit.

## I. FACTS

The Credit Union is a creature of federal law established for the benefit of the employees of Digital Equipment Corporation ("DEC"). The Debtor worked for DEC for sixteen and one-half years. On January 21, 1994, while so employed, she obtained an unsecured loan of $15,459.41 from the Credit Union. The note calls for monthly payments over five years with interest at 14½% per annum. It authorizes payments through charges to the Debtor's deposit account with the Credit Union. The note states the Debtor will be "in default" upon the occurrence of various events which include the filing of a bankruptcy petition, and upon default it gives the Credit Union the right to "demand payment of the unpaid balance."

In July of 1994, the Debtor lost her job with DEC as part of a general reduction in force. She was also divorced from her husband in the same month. DEC paid her approximately $7,000 as severance pay,

which was deposited with the Credit Union on August 4th.

The Debtor filed her bankruptcy petition under chapter 7 on August 10th. She was then current on her monthly payments under the note. Having received notification of the filing from the court, the Credit Union wrote to the Debtor on August 23rd stating that because of the bankruptcy it had "frozen" the Debtor's deposit account. The account then had a balance of $7,871.23, far less than the balance of the note. A few weeks later, the Credit Union filed a motion for relief from the automatic stay seeking permission to make the setoff.

In freezing the account, the Credit Union refuses to honor requests for withdrawals. It has not, however, made an entry on its books applying the account balance against the loan. The deposit account therefore continues to earn interest.

## II. FREEZE AND THE AUTOMATIC STAY

The Debtor contends the freeze violates the automatic stay in several respects. The freeze, says the Debtor, is a "setoff" within the meaning of section 362(a)(7), an "act to ... exercise control over property of the estate" within the meaning of section 362(a)(3), an "act to ... enforce [a] lien" within the meaning of section 362(a)(4), and an "act to collect ... a claim" within the meaning of section 362(a)(6).

The Code's provisions imposing the automatic stay must be read in light of two other sections of the Code—section 542(b) and section 363.

Section 542(b) provides in pertinent part:

[A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, *except to the extent that such debt may be offset under section 553 of this title....* (emphasis supplied).[1]

Congress seems to be saying in section 542(b) that if there is a valid right of setoff, a

1. 11 U.S.C. § 542(b) (1988).

party owing indebtedness to the estate need not pay its debt. The phrase "may be offset" indicates approval of action withholding payment short of setoff. This is authorization for the Credit Union's freeze.

The validity of the freeze is also supported by section 363. Under section 363, the estate is prohibited from using "cash collateral" unless an entity having an interest in the collateral consents or the court authorizes the use.[2] Section 363(a) defines "cash collateral" to include a deposit account, and section 506(a) treats the right of setoff as the equivalent of a security interest. Thus if the Credit Union were to honor its payment obligation it would be permitting a violation of the obligations owed it concerning use of its cash collateral.

I conclude from this statutory scheme that the Credit Union's action in freezing the deposit account is not a violation of the automatic stay if it has the right to set off the account against the note obligation. Although a freeze, like a setoff, denies use of the account, there is technically no setoff until the Credit Union makes an entry on its books applying the account against the debt.[3] Without such an entry, the account continues to bear interest, so there is an economic difference between a freeze and setoff. A number of courts adopt this reasoning and permit the freeze.[4] They are impressed with the dilemma a financial institution finds itself in due to the conflict between potential loss of the benefit of setoff and the command of the automatic stay against setoff. Realizing the right of setoff may be lost without immediate action, these courts permit a freeze because they regard the freeze as a preservation of the status quo rather than action taken which improves the creditor's position.

Other courts view a freeze differently. Because the freeze denies a debtor use of funds as effectively as setoff, some regard the freeze as a setoff under another name.[5] Some recognize the technical difference between freeze and setoff but hold the freeze is an exercise of control over property of the estate prohibited by section 362(a)(3).[6]

The Eleventh Circuit takes a compromise approach. It requires a bank lender to honor a check drawn on the debtor's account unless, prior to its midnight deadline, the bank files a motion seeking an order denying the estate use of the account and deposits the balance of the account into the registry of the

---

**2.** 11 U.S.C. § 363(c)(2) (1988).

**3.** *Baker v. National City Bank,* 511 F.2d 1016 (6th Cir.1975).

**4.** *E.g., Bank of Am. Nat'l Trust and Sav. Ass'n v. Edgins (In re Edgins),* 36 B.R. 480 (9th Cir. BAP 1984); *In re Lough,* 163 B.R. 586 (Bankr.D.Idaho 1994); *In re Pimental,* 142 B.R. 26 (Bankr. D.R.I.1992); *In re Briggs,* 143 B.R. 438 (Bankr. E.D.Mich.1992); *Air Atlanta, Inc. v. National Bank of Ga., Inc.,* 81 B.R. 724 (N.D.Ga.1987); *Crispell v. Landmark Bank (In re Crispell),* 73 B.R. 375 (Bankr.E.D.Mo.1987); *R.H. Williams v. American Bank of Mid–Cities, N.A. (In re Williams),* 61 B.R. 567 (Bankr.N.D.Tex.1986); *Craig Shackelford Farms, Inc. v. Portland Bank (In re Hoffman),* 51 B.R. 42 (Bankr.W.D.Ark. 1985); *Kenney's Franchise Corp. v. Central Fid. Bank NA, Lynchburg,* 22 B.R. 747 (Bankr. W.D.Va.1982); *Third Nat'l Bank in Nashville v. Carpenter (In re Carpenter),* 14 B.R. 405 (Bankr. M.D.Tenn.1981).

**5.** *E.g., In re Rio* 55 B.R. 814 (Bankr.M.D.Ala. 1985) (administrative hold is a freeze); *LHG Resources, Inc. v. First Nat'l Bank of Md. (In re LHG Resources, Inc.),* 34 B.R. 202 (Bankr.

W.D.Tex.1983); *Cusanno v. Fidelity Bank (In re Cusanno),* 17 B.R. 879 (Bankr.E.D.Pa.1982) (freeze is setoff); *Executive Assocs., Inc. v. Southern Nat'l Bank (In re Executive Assocs., Inc.),* 24 B.R. 171 (Bankr.S.D.Tex.1982) (freeze tantamount to setoff); *In re Crispell,* 73 B.R. at 379 (freeze does not violate stay but continuing freeze for extended period of time would constitute setoff in violation of § 362(a)(7)); *In re New York City Shoes, Inc.,* 78 B.R. 426 (Bankr.E.D.Pa. 1987) (under controlling Pennsylvania law freeze constitutes setoff).

**6.** *E.g., B.F. Goodrich Employees Federal Credit Union v. Patterson (In re Patterson),* 967 F.2d 505 (11th Cir.1992); *In re Flynn,* 143 B.R. 798 (Bankr.D.R.I.1992); *In re Quality Interiors, Inc.,* 127 B.R. 391 (Bankr.N.D.Ohio 1991); *First Conn. Small Business Inv. Co. v. Bank of Boston Conn. (In re First Conn. Small Business Inv.),* 118 B.R. 179 (Bankr.D.Conn.1990); *Homan v. Kemba Cincinnati Credit Union (In re Homan),* 116 B.R. 595 (Bankr.S.D.Ohio 1990); *In re New York City Shoes, Inc.,* 78 B.R. 426 (Bankr.E.D.Pa. 1987); *In re Rinehart,* 76 B.R. 746 (Bankr.D.S.D. 1987); *In re Wildcat Constr. Co., Inc.,* 57 B.R. 981 (Bankr.D.Vt.1986); *Nelson v. First Nat'l Bank & Trust Co., El Dorado (In re Nelson),* 6 B.R. 248 (Bankr.D.Kan.1980).

bankruptcy court.[7] This is not very practical. The midnight deadline applies only to checks received from other banks.[8] A bank has no such grace period with respect to a check presented for payment at the counter.[9] More basically, this approach fails to give sufficient recognition to a bank lender's rights under sections 363(c)(2) and 542(b).

The freeze is nevertheless proper only if it preserves a valid right of setoff. I now turn to the question of whether the Credit Union has that right.

## III. CREDIT UNION'S RIGHT OF SET-OFF

### A. Prepetition Lack of Mutuality

■ Section 553(a) provides that the Bankruptcy Code "does not affect any right of a creditor to offset a mutual debt ow[ed] by such creditor to the debtor...."[10] The Debtor contends this language makes the Credit Union's postpetition right of setoff dependent upon its setoff rights under Massachusetts law immediately prior to the filing. At that time, nothing was presently due the Credit Union. In contrast, the entire indebtedness owed by the Credit Union under its deposit account agreement was due upon demand of the Debtor. Under Massachusetts law, the Credit Union could not have then set off the account because the variation in due dates of the debts deprived them of the mutuality necessary for setoff.[11] In Massachusetts, a financial institution may set off a deposit account against debt owed but not yet due only if the depositor is the subject of an insolvency proceeding.[12] This is in contrast to the law of many states, under which the debtor's insolvency, even without a formal insolvency proceeding, is sufficient to dispense with the requirement of mutuality of due dates.[13] The Debtor was involved in no insolvency proceeding prior to her present bankruptcy. Thus the Credit Union had no prepetition right of setoff.

### B. The Proper Test—Mutuality of Due Dates After the Filing

The Debtor is incorrect, however, in her contention that the requirement of mutuality of due dates must be met prior to the bankruptcy filing.

Section 68 of the prior Bankruptcy Act contained this command: "In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid."[14] In applying this statute, courts approved postfiling setoff even though at the petition filing date one of the debts was not presently due.[15] Setoff

---

**7.** *In re Patterson,* 967 F.2d 505 (11th Cir.1992).

**8.** Mass.Gen.L. ch. 106 § 4–301(1) (1984) provides:

> (1) Where an authorized settlement for a demand item (other than a documentary draft) received by a payor bank *otherwise than for immediate payment over the counter* has been made before midnight of the banking day of receipt the payor bank may revoke the settlement and recover any payment if ... before its midnight deadline.... (emphasis supplied).
> *See also Global Dist. Network, Inc. v. Star Expansion Co.,* 949 F.2d 910 (7th Cir.1991) (acceptance of item only final after midnight deadline); *Central Bank and Trust Co. v. First Northwest Bank,* 332 F.Supp. 1166 (E.D.Mo.1971), *aff'd,* 458 F.2d 511 (8th Cir.1972) (midnight deadline rule promotes certainty in national banking system); *American Nat'l Bank & Trust of Chicago v. Central Bank of Denver,* 132 B.R. 171 (Bankr. D.Colo.1991) (notice of bankruptcy does not alter UCC imposition of strict liability for failure to meet midnight deadline).

**9.** *Id.*

**10.** 11 U.S.C. § 533(a) (1988).

**11.** *Harding v. Broadway Nat'l Bank of Chelsea,* 294 Mass. 13, 200 N.E. 386 (1936).

**12.** *Id.*

**13.** 4 *Collier on Bankruptcy* ¶ 68.17 (James Wm. Moore, Lawrence P. King, eds., 14th ed. 1978).

**14.** 11 U.S.C. § 108(a) (*repealed* 1978).

**15.** *Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313 (1913) (prepetition setoff approved notwithstanding lack of mutuality in due dates because setoff would be permissible postpetition); *Widetzky v. Pilgrim Trust Co.,* 108 F.2d 647 (1st Cir.1940) (postpetition setoff of deposit account against loan debt allowed even though loan was unmatured); 4 *Collier on Bankruptcy* § 68.10[2] (James Wm. Moore, Lawrence P. King, eds., 14th ed. 1978).

was also permitted even though one debt was liquidated and the other not.[16]

Section 553(a) is worded differently than section 68 of the Act. It imposes no command for postpetition setoff of mutual debts. Instead, section 553(a) provides in part as follows: "[T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case...."[17] At first blush, the difference in wording between the Act and Code might be thought to mean postpetition setoff rights are dependent upon rights existing immediately before the filing. Legislative history refutes this, however. The House report states:

> Under the Bankruptcy Act, a creditor that owes a debt to the debtor is entitled to offset that against the debt owed by the debtor to the creditor except to the extent that the claim of the creditor is not allowable or the debt of the creditor to the debtor was acquired with a view toward setoff in the bankruptcy case.... This bill protects the right of setoff with some additional restrictions.[18]

The report then goes on to discuss the additional restrictions on setoff that now appear in section 553, which pertain to (i) debts incurred by the creditor for the purpose of setoff, and (ii) prepetition setoff in a manner which improves the creditor's position. There is no expression of an intent to change the rule permitting postpetition setoff despite a prepetition lack of mutuality of due dates.

Support appears elsewhere in the Code for postpetition setoff notwithstanding the prepetition lack of mutuality of due dates. Section 502(b)(1) prohibits disallowance of a claim merely because the claim is unmatured.[19] The House and Senate Reports explain the prohibition in these words:

> [B]ankruptcy operates as the acceleration of the principal amount of all claims against the debtor. One unarticulated reason for this is that the discounting factor for claims after the commencement of the case is equivalent to contractual interest rate on the claim.[20]

The statutory definition of "claim" also indicates a claim is automatically accelerated by reason of the filing. A claim is defined to mean "right to payment, whether or not such right is ... matured...."[21]

The Code's elimination of the Act's mandate for postpetition setoff seems to be the result of the Congressional decision to subject setoff to the automatic stay. Legislative history indicates Congressional awareness of the disastrous consequences that uncontrolled exercise of setoff rights can have, especially in reorganization.[22] Congress wished to give the estate representative the opportunity to prevent a setoff by offering the creditor adequate protection of its setoff rights in the form of a security interest in other property.[23]

With many of these considerations in mind, decisions under the Code permit postpetition setoff even though only one of the debts was due prepetition.[24] For similar reasons, the

---

16. 4 *Collier on Bankruptcy* ¶ 68.10 [2] (James Wm. Moore, Lawrence P. King, eds., 14th ed. 1978).

17. 11 U.S.C. § 553(a) (1988).

18. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 183–85 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6143–6145.

19. 11 U.S.C. § 502(b)(1) (1988).

20. H.R.Rep. No. 95–595, 98th Cong., 1st Sess. 353 (1977), U.S.Code Cong. & Admin.News 1978, p. 6309; S.Rep. No. 989, 95th Cong.2d Sess. 63 (1978), U.S.Code Cong. & Admin.News 1978, p. 5849.

21. 11 U.S.C. § 101(5) (1988 & Supp. V 1993).

22. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 183 (1977).

23. *Id.* at 185.

24. *E.g., In re Hoffman,* 51 B.R. 42 (Bankr. W.D.Ark.1985); *In re Manville Forest Prods. Co.,* 43 B.R. 293 (Bankr.S.D.N.Y.1984); *Tonyan Constr. Co., Inc. v. McHenry State Bank (In re Tonyan Constr. Co.),* 28 B.R. 714 (Bankr.N.D.Ill. 1983); *Traders Bank of Kansas City v. Stonitsch (In re Isis Foods, Inc.),* 24 B.R. 75 (Bankr. W.D.Mo.1982); *Big Bear Supermarket v. Princess Baking Corp. (In re Princess Baking Corp.),* 5 B.R. 587 (Bankr.S.D.Cal.1980).

decisions also approve postpetition setoff of a noncontingent, liquidated debt against one which is unliquidated or contingent.[25]

The Credit Union need not, therefore, rely upon the bankruptcy acceleration clause in the note. If the clause were to be construed as requiring a demand to accomplish acceleration, such a demand would appear to be a violation of the automatic stay as an act to "collect" a claim within the meaning of section 362(a)(6). If the clause is interpreted as effecting automatic acceleration upon bankruptcy, it would not appear to be invalid on policy grounds because it would accomplish only what the Bankruptcy Code mandates. Such a clause in an unsecured note should be distinguished from one in a secured note which a debtor wishes to continue to pay because of a desire to retain the collateral. Courts have struck down these clauses because of their conflict with the fresh start policy of the Code.[26]

### C. Credit Union's Improvement of Position Through $7,000 Deposit

Setoff smacks of a preference. It causes an unsecured debt to be paid. Because of

this, courts prohibited setoff in railroad reorganizations under the Act.[27]

Congress accordingly gave careful consideration to whether postpetition setoff should be permitted in the Code.[28] It concluded that setoff should be generally permitted, subject to control through the automatic stay, because a creditor's setoff rights are similar to a security interest.[29]

Congress nevertheless decided to give the estate avoidance rights concerning a prepetition setoff whereby the creditor had improved its position in a manner analogous to a creditor obtaining a preferential security interest.[30] Section 553(b) of the Code is the result.[31]

Under section 553(b), a trustee may recover the amount of a prepetition setoff, made within 90 days before bankruptcy, to the extent the amount set off exceeds what could have been set off 90 days prior to bankruptcy. Suppose the Credit Union had set off the Debtor's account after the $7,000 deposit and before the petition was filed. Presumably, the balance of the account would have then exceeded by about $7,000 the balance 90 days prior to the filing, so that the Credit

---

**25.** *Sherman v. First City Bank of Dallas (In re United Sciences of America, Inc.)*, 893 F.2d 720 (5th Cir.1990); *Braniff Airways, Inc. v. Exxon Co. U.S.A.*, 814 F.2d 1030 (5th Cir.1987); *In re Nickerson & Nickerson, Inc.*, 62 B.R. 83 (Bankr. D.Neb.1986); *Stair v. Hamilton Bank of Morristown (In re Morristown Lincoln–Mercury, Inc.)*, 42 B.R. 413 (Bankr.E.D.Tenn.1984).

**26.** *See, e.g., Riggs Nat'l Bank of Wash., D.C. v. Perry (In re Perry)*, 729 F.2d 982 (4th Cir.1984) (clause placing debtor in default upon bankruptcy filing declared invalid because against fresh start policy when debtor wished to maintain payments and retain car constituting security); *Brock v. American Sec. Bank (In re Brock)*, 23 B.R. 998 (Bankr.D.C.1982) (same). *Contra Chrysler Credit Corp. v. Sparago (In re Sparago)*, 31 B.R. 552 (Bankr.E.D.N.Y.1983) (bankruptcy acceleration clause valid as reasonable remedy to compensate for creditor's loss of debtor's personal liability after bankruptcy discharge).

**27.** *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 474, 94 S.Ct. 2504, 2508–09, 41 L.Ed.2d 243 (1974) ("[T]o the extent [setoff] is allowed, it grants a preference to the claim of one creditor over the others by the happenstance that it owes [a debt] that the others do not."); *Penn Centr. Transp. Co. v. National City Bank of Cleveland, Ohio (In re Penn Centr. Transp. Co.)*, 315 F.Supp.

1281 (E.D.Pa.1970) (banks enjoined from exercising setoff).

**28.** H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 183–86 (1977).

**29.** *Id.*

**30.** *Id.* at 184.

**31.** Section 553(b) provides:

(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(14), 365(h)(2), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—
  (A) 90 days before the date of the filing of the petition; and
  (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.
(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

Union was that much better off than it would have been had it set off the account 90 days prior to the filing date. To the extent it was better off, under section 553(b) the estate representative could have recovered the $7,000 from the Credit Union.

The Credit Union made no such prepetition setoff. Yet it now wishes to improve its position in a similar manner by a postpetition setoff. Nothing in section 553(b) prevents the Credit Union from having greater setoff rights postpetition than it would have had prepetition. The legislative history, moreover, mentions only the undesirability of placing greater restrictions on postpetition setoff than on prepetition setoff. The House report states:

> If the restrictions placed on postpetition setoff are greater than those placed on prepetition setoff, there is an incentive for creditors with a right of setoff, especially banks, to offset during a period of financial difficulty of the debtor, rather than continuing to carry the debtor in hopes that matters will improve. Thus, whatever limitations are adopted for postpetition setoff, it is important to apply them to prepetition setoff as well. If they are not applied equally, a creditor may attempt to avoid the postpetition limitations by offsetting prepetition, perhaps precipitating the bankruptcy of the debtor. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 186 (1977), U.S.Code Cong. & Admin.News 1978, p. 6146.

There is good reason the House report makes no mention of restricting the improvement of position test to prepetition setoff. The House bill as it then read applied the test only to postpetition setoff.[32] The Senate, however, believed the test should be applied to prepetition setoff only, and its bill

so provided.[33] Section 553(b) is therefore the result of the Senate bill.

■ The Legislative history contains no explanation of why Congress chose not to apply the improvement of position test to postpetition as well as prepetition setoff. Doing so would have treated setoff in a manner similar to that accorded a security interest in accounts or inventory. The estate representative is permitted to avoid as a preference a security interest in accounts or inventory to the extent an increase in the value of the security interest during the 90 day prepetition period brought about an improvement in the creditor's position.[34] It is not a prerequisite to this avoidance right that the creditor have foreclosed before bankruptcy.[35] In light of the similarity Congress saw between setoff rights and security interests, there is therefore an apparent inconsistency between the setoff and preference provisions of the Code. That inconsistency is difficult to rationalize in the context of a setoff by a financial institution of a deposit account against loan indebtedness. It is less of an inconsistency when the party asserting setoff rights is a businessman who happens to have had a transaction with the debtor that created the mutual debt. There the analogy between an increase in debt owed by the creditor and an increase in security value seems less apt.

The right of setoff is based upon the inequity of requiring a party to pay what he is entitled to recover.[36] It is arguably inequitable to permit the Credit Union to do postpetition what it could not have done prepetition. My function, however, is to interpret statutes, not to draft them. The improvement of position test is expressly based upon an actual exercise of prepetition setoff. I therefore agree with those courts that have so restricted it.[37]

---

**32.** Section 553 of H.R. 8200, 95th Cong., 1st Sess. (1977).

**33.** Section 553 of S. 2266, 95th Cong., 2d Sess. (1978).

**34.** 11 U.S.C. § 547(c)(5) (1988).

**35.** *Id.*

**36.** H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 183, (1977); 4 *Collier on Bankruptcy* ¶ 68.01

page 843 (James Wm. Moore, Lawrence P. King, eds., 14th ed. 1978); Loyd, *The Development of Setoff,* 64 U.Pa.L.Rev. 541 (1916).

**37.** *E.g., Energy Co-op., Inc. v. Koch Refining Co., Inc. (In re Energy Co-op., Inc.),* 100 B.R. 992 (N.D.Ill.1989); *Rooster, Inc., v. Raphael Roy, S.R.L. (In re Rooster, Inc.),* 127 B.R. 560 (Bankr. E.D.Pa.1991); *Heckathorn Constr. Co., Inc. v. Bass Mech. Contr., Inc. (In re Bass Mech. Contr., Inc.),* 88 B.R. 201 (Bankr.W.D.Ark.1988); *Row*

**D.** *Did the Credit Union Accept the $7,000 Deposit for the Purpose of Obtaining A Right of Setoff?*

■ Another restriction on setoff added by the Code is not dependent upon a prepetition exercise of setoff rights. A creditor may not set off mutual debts to the extent:

"the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor." [38]

The debtor is presumed to have been insolvent during the 90 days immediately preceding the date of the petition.[39] Whether or not the Credit Union accepted the $7,000 deposit for the purpose of obtaining a right of setoff is of course a question of fact. The Credit Union may well have known the deposit constituted severance pay and that the Debtor was then unemployed. If so, such knowledge would be circumstantial evidence of the prohibited purpose. There would therefore appear to be adequate grounds for the Debtor to amend her complaint in order to allege a cause of action under section 553(a)(3).

## IV. *CREDIT UNION'S CLAIMED SECURITY INTEREST IN ACCOUNT*

■ The Credit Union contends its rights in the account are not based solely upon setoff. It also claims a security interest in the account. It points to another provision of the note, which reads as follows:

LIEN ON SHARES: If you are in default, we may apply all shares (as permitted by law) then on deposit needed by us to repay your loan in accordance with the Federal Credit Union Act and our bylaws. If a third party should make judicial application for or otherwise attempt to enforce a lien on your shares and deposits, we may freeze such shares and deposits to the extent of your entire loan. A freeze would prevent your withdrawal of any funds subject to the freeze.

I assume that by "shares" is meant the deposit account.[40] This clause, says the Credit Union, raises its setoff rights to the status of a security interest. If the clause does that, there might then be an interesting reversal in the rights of the parties. As a secured creditor, the Credit Union would presumably be immune from the argument it received the $7,000 deposit for the purpose of obtaining a right of setoff against the debtor. Conversely, however, the Credit Union would become vulnerable under a section 547(b)(5) argument that it received a $7,000 preferential transfer.

The clause in the note does not create a security interest in the deposit account. The deposit account constitutes a claim against the Credit Union.[41] That claim is a receivable of the Debtor in which a security interest could be granted to a third party. But treating it as security interest for debt owed the Credit Union makes no sense. The deposit account is the Credit Union's own obligation, so the Credit Union's rights are necessarily limited to setoff. As one preeminent writer has observed: "A bank's right of setoff against a depositor's account is often loosely referred to as a 'banker's lien,' but the 'lien' usage has never led anyone to think that the bank held a security interest in the bank account." [42] The courts agree.[43] The

---

*Steel, Inc. v. Asphalt and Sealers Equip. Mfg. (In re Row Steel, Inc.)*, 33 B.R. 20 (Bankr.E.D.N.C. 1983). *But see Tavormina v. ITT Commercial Finance Corp. (In re Aquasport, Inc.)*, 115 B.R. 720 (Bankr.S.D.Fla.1990), *aff'd* 155 B.R. 245 (S.D.Fla.1992)

**38.** 11 U.S.C. § 553(a)(3) (1988).

**39.** 11 U.S.C. § 553(c) (1988).

**40.** *See* 12 U.S.C. §§ 1752, 1757 (1988) (using the phrase "share" and "account" interchangeably in setting forth the powers of a federal credit union).

**41.** *E.g., In re Briggs*, 143 B.R. 438 (Bankr. E.D.Mich.1992) (deposit creates depositor's "right of payment").

**42.** 1 Grant Gilmore, *Security Interests in Personal Property* 316 (1965).

**43.** *E.g., Griffin v. Continental Am. Life Ins. Co.*, 722 F.2d 671 (11th Cir.1984) (right of setoff not a lien); *In re Merchandise Mart of Columbia*, 79 F.Supp. 686 (E.D.S.C.1948) (same); *Lowden v. Iowa–Des Moines Nat'l Bank & Trust Co.*, 10 F.Supp. 430 (S.D.Iowa 1935), *aff'd* 84 F.2d 856 (8th Cir.1936), *cert. denied*, 299 U.S. 584, 57

Credit Union's rights are those of setoff, so they are subject to only the provisions of section 553.

## V. STANDING OF DEBTOR

■ The Credit Union contends the Debtor has no standing to bring this adversary proceeding or to oppose the motion for relief from stay. It says only the chapter 7 trustee may do so because this dispute affects property of the bankruptcy estate. Property of the estate is certainly implicated here. But the Debtor has the right to claim exemptions "from property of the estate." [44] The Debtor may claim from any property a $400 exemption plus a maximum of $3,750 of any unused amount of her residence exemption.[45] She may have some other valid exemption claim with respect to the deposit account. Under section 522(h) of the Code, "[t]he debtor may ... recover a setoff to the extent that the debtor could have exempted such property...." [46]

## VI. CONCLUSION

I will grant the Credit Union's motion to dismiss the complaint unless within twenty days from today the Debtor files a motion to amend her complaint alleging a cause of action under section 553(a)(3). The Debtor must also either (i) limit her section 553(a)(3) case to property subject to a valid claim of exemption, or (ii) have the chapter 7 trustee join as a plaintiff. Because of this potential cause of action, I deny without prejudice the Credit Union's motion for relief from stay.

---

S.Ct. 109, 81 L.Ed. 430 (1936) (same); *In re Briggs,* 143 B.R. 438 (Bankr.E.D.Mich.1992) (right of setoff not a lien as fundamental distinction exists between them). *Compare, In re New York City Shoes, Inc.,* 78 B.R. 426 (Bankr.E.D.Pa. 1987) (bank in jeopardy of losing "banker's lien" without freeze remedy).

44. 11 U.S.C. § 522(b) (1988).

45. 11 U.S.C. § 522(d)(5) (1988).

46. 11 U.S.C. § 522(h) (1988).